| 100 | 207 |
| 100 | 658 |

# Richmond.

## Boisseau v. Bass' Administrator and Others.

### January 30, 1902.

#### Absent, Buchanan, J.

1. Fieri Facias—*Lien—Life Insurance.*—The interest of an assured in a policy on his life which has no present market value, but is dependent for its continued existence on voluntary payments to be made in the future by the assured, is not such an interest or estate as can be reached by a *fieri facias.* It is immaterial tnat the assured, in a given contingency, is allowed to surrender his policy and take in lieu thereof a paid-up policy for a different amount. This would involve the making of a new contract, and, ordinarily, a creditor can only subject the interest of his debtor in existing contracts. A debt which has a present existence, although payable in the future, may be subjected to the lien of a *fieri facias,* but not a debt which rests upon a contingency which may or may not happen, and over which the court has no control.

Appeal from a decree of the Corporation Court of the city of Danville, pronounced June 15, 1900, in a suit in chancery wherein the appellant was the complainant, and the appellees were the defendants. The bill in this cause was filed in the name of "P. H. Boisseau, Sergeant of the city of Danville, Va., who sues for the benefit and at the costs of Jennie M. Robinson."

*Affirmed.*

The opinion states the case.

*James H. Guthrie, B. Green* and *Wm. Leigh,* for the appellant.

*Peatross & Harris* and *E. E. Bouldin,* for the appellees.

HARRISON, J., delivered the opinion of the court.

The bill in this case alleges that Jennie M. Robinson, on the 6th day of March, 1899, recovered a judgment in the Corporation Court of the city of Danville against one R. T. Bass for the sum of $1,500, with interest and costs; that on the 22d day of March, 1899, an execution was issued on this judgment and delivered to the appellant as sergeant of said city to be executed; that said execution was returnable to the first day of the May term of the court from which it issued, and was duly returned by the sergeant endorsed "no effects." It is further alleged that at the time the execution was delivered to the appellant the judgment debtor was the owner of a policy taken out on his life, payable to himself, in the Mutual Life Insurance Company of New York, and dated the 15th day of October, 1887, for the sum of $3,000; that the insured departed this life on the 2d day of May, 1900, and that Thomas J. Penn, the appellee, had qualified as his administrator. The bill charges that the execution, from the time it was delivered to the appellant, was a subsisting and continuing lien on all the personal estate of the debtor, including the life insurance policy mentioned, and that by virtue of such lien appellant is entitled to recover the amount thereof from the Mutual Life Insurance Company of New York; that his right to collect such insurance policy, to the extent of the execution in favor of Jennie M. Robinson, is paramount and superior to the right of the administrator of R. T. Bass to collect the same. The bill prays that the several parties in interest be enjoined from collecting the policy; that a receiver be appointed to collect and hold the same subject to the order of the court, and for general relief. An injunction was granted, an answer filed by the appellee, and subsequently a decree entered dissolving the injunction. From that decree this appeal has been taken.

It is suggested in the bill, and is established by the record,

that R. T. Bass, in his lifetime, on the 16th day of March, 1899, assigned and transferred the policy in question to C. L. Holland to secure the payment of $650 obtained by the assured from him. It is not disputed that C. L. Holland has a prior claim upon the policy to the extent of his debt.

The question presented by the record is whether or not, under section 3601 of the Code, Jennie M. Robinson, the execution creditor, had, by virtue of her execution in the hands of the appellant, a lien upon the policy here involved. In other words, was this policy such personal estate as a *fi. fa.* lien would fasten upon in contemplation of the section mentioned?

That section provides that every writ of *fieri facias* shall, in addition to the lien it has under section 3587 of the Code on what is capable of being levied on under that section, be a lien, from the time it is delivered to a sheriff or other officer to be executed, on all the personal estate of or to which the judgment debtor is or may afterwards and before the return day of the said writ become possessed or entitled, and which is not capable of being levied on under the said section, except as to exempted property, and except also as against certain persons. Code, sec. 3601. And this lien continues so long as the judgment can be enforced. Sec. 3602.

Conceding to this statute the most comprehensive scope, and that every species of personal estate or interest therein is contemplated, the question remains whether or not the policy under consideration is such an estate or interest as can be reached or converted into a benefit to the execution creditor.

The policy is known as a "twenty-year distribution policy." A premium of $29.22 had to be paid quarterly on the 15th day of January, April, July and October in every year, during the continuance of the contract, until premiums for twenty full years had been paid to the company. Until the twenty years had expired, the interest or estate of the assured in the policy was wholly contingent, depending upon his completion of the

contract by the payment of the premiums therein provided for. The payment of these premiums was a condition precedent to the right of the assured to any claim against the company, and such payment was entirely voluntary. No power could compel the assured to pay them. If the payments ceased, the assured forfeited all those previously made, and the company was discharged from all liability. This policy, or contract of insurance, did not constitute a present fixed liability upon the company to pay the assured anything; nor did it create any present indebtedness that the assured could demand within the twenty years. The assured died before the expiration of the twenty years, and before the payment of all the premiums. Until his death, which occurred after the return day of the execution against him, the policy was liable to be forfeited by the non-payment of premiums to accrue thereon. It was, therefore, altogether contingent whether an obligation to pay any sum to the assured would ever rest upon the company by reason of such policy.

When a debt has a present existence, although payable at some future day, it is subject to the lien of a *fi. fa.*, and may be reached by garnishment or other appropriate proceeding; but the rule is otherwise where the debt rests upon a contingency that may or may not happen, and over which the court has no control.

In Freeman on Executions, the learned author says: "Debts which are due contingently, and which therefore may never become due, are not subject to garnishment. . . . It is well settled in England, under the process of foreign attachment, that no lien can be acquired upon a debt the very existence of which is dependent upon a contingency, for the very satisfactory reason that it is no debt." 1 Freeman Executions, sec. 164.

Again, the same author says: "Where a policy of life insurance has issued, the insurer cannot be garnished during the existence of the life of the assured, because it is not certain whether any sum will ever become due on the policy." Sec. 164a.

After laying down the well-recognized rule of law that an existing debt, not due at the service of the writ, but which is certain to become due at a future period, may be reached both under execution and attachment, it is said: "This rule has no application to future contingent liabilities; nor to any case where the liability of the defendant to the garnishee depends upon the performance by the latter of some condition precedent, or upon his full compliance with the terms of some unperformed agreement or contract. The debt itself must be in existence at the time of the service of the writ, free from any contingency, and it may so exist, though the time stipulated for its payment be very remote." Freeman on Executions, sec. 165.

In Drake on Attachments, sec. 551, it is said: "The debt from the garnishee to the defendant, in respect of which it is sought to charge the former, must moreover be absolutely payable, at present or future, and not dependent on any contingency. If the contract between the parties be of such a nature that it is uncertain and contingent whether anything will ever be due in virtue of it, it will not give rise to such a credit as may be attached; for that cannot properly be called a debt, which is not certainly and at all events payable either at the present or some future period. *Brockenbrough* v. *Ward's Adm'r*, 4 Rand. 352; *Baltimore & Ohio R. Co.* v. *McCullough*, 12 Gratt. 595; *Same* v. *Gallahue*, 14 Gratt. 563; *Metropolitan Life Ins. Co.* v. *Rutherford*, 95 Va. 773; *Case* v. *Dewy*, 55 Mich. 116; *Wood* v. *Buxton*, 108 Mass. 102; *Godfrey* v. *Macomber*, 128 Mass. 188; *Edwards* v. *Roepke*, 74 Wis. 571; *Day* v. *New England Life Ins. Co.*, 111 Penn. St. 507.

In the case last cited, it was held that a policy of life insurance payable to the legal representative of the assured is not the subject of an attachment execution during the life of the assured. The policy was payable to the assured, his executors or administrators, for the benefit of his widow, if any. The wife died in the lifetime of the assured, thus mak-

ing the policy, which was an ordinary life policy, payable to the legal representatives of the assured, at his d ath. The court said: "No action could by any possibility have been maintained for the recovery of the money by the deceased in his lifetime, nor by any other persons except upon the condition that he had first died. His death was absolutely indispensable to the existence of any right of action on the policy. More than this, if the assured had voluntarily surrendered the policy at any moment before his death, or if it had become forfeited by breach of condition, no right of action would ever have existed, even in his legal representatives. Still more, at no time during his life could the proceedings upon the attachment have been brought to final judgment in favor of the attaching creditor, because it could never be known until the death of the assured had actually transpired, whether any money would become due upon the policy. The law regarding attachments contemplates and provides for actual proceedings resulting in judgment for one party or the other, not for an entire suspension of proceedings for an indefinite and uncertain period. A policy effected at the age of twenty-one, payable at death, might not become payable in fact for sixty or more years. Can it be that an attaching creditor upon such a policy could demand the judgment of the court against the company as garnishee, payable at the death of the assured, or as an alternative claim that the court should suspend all proceedings until the assured shall die? It is incredible. No judgment could be given in advance of death, because no court could possibly know for what amount the judgment should be rendered, nor whether any amount would ever become due."

In that case, like the one at bar, there was no existing indebtedness that could be reached and fastened upon by an execution lien. The condition precedent in each case was that the assured pay the premiums during the time specified in the contract, which made the right to demand anything wholly con-

tingent because the payment of such premiums rested upon the voluntary action of the assured, and therefore might never be made.

The lien of an execution can affect only such subjects as exist when it is alive. It is impossible to conceive the existence of a lien without a subject for it to operate upon. This proposition seems so self-evident that we deem it unnecessary to consider it further.

There are only two authorities among those cited by appellant that appear to be in conflict with the principle we have been discussing, and to these we shall briefly allude.

In the case of *Hicks, Trustee,* v. *Roanoke Brick Co., &c.,* 94 Va. 741, one of the questions involved was the right of priority of certain execution creditors of a contractor, by reason of their *fi. fa.* liens upon a fund in the hands of the city of Roanoke, it being fifteen *per cent.* of the cost of certain work, which the city had the right to retain until the entire work was completed, the work not being then finished. In delivering the opinion of the court, Judge Riely says that the executions were liens on the amount due by the city to Patterson, although the same could not be enforced until the completion of the work. The learned judge seems to have treated the fund in question as a debt *in presenti solvendum in futuro.* It does not appear from the opinion that the question was raised, as to whether the liability of the city rested upon a contingency. Be that as it may, the decision is not approved, to the extent that it may be regarded as authority for the proposition that a future liability which depends wholly upon a contingency that may or may not happen is subject to the lien of an execution.

The case of *Anthracite Ins. Co.* v. *Sears,* 109 Mass. 383, is also particularly relied on by appellant. That was a proceeding in equity, to subject, during the lifetime of the assured, a policy to the payment of a debt, under a statute which provided for such a proceeding where the subject could not be reached

by attachment, or taken on execution. An important distinction between that case and the one at bar is that it was there admitted, as one of the agreed facts in the case, that the insurance company was in the habit of taking up policies, like the one there involved, when the company and the holder of the policy could agree upon terms; giving it as stated by the court a present market value. No such fact is admitted in the case at bar. On the contrary, we have nothing before us but the policy, under which, as already pointed out, there was no existing indebtedness. If, however, that case can be relied on as contravening the well settled rule to which we have adverted, we must decline to follow it.

In the case at bar, the premiums had been paid for more than three years, and the appellants rely upon the following provision of the policy as vesting in the assured a present interest that could be demanded: "Paid-Up Policy—after three full annual premiums have been paid upon this policy, the company will, upon the legal surrender thereof before default in payment of any premium, or within six months thereafter, issue a non-participating policy for paid-up insurance, payable as herein provided, for the proportion of the amount of this policy which the number of full year premiums paid bears to the total number required."

To avail of the terms of this stipulation of the policy would involve not merely a change of the contract but the making of a new contract between the assured and the company. Ordinarily, a creditor can only subject to his benefit such contract as exists in favor of his debtor. He cannot compel his debtor to change his contract, or make a new and different one in order that he may reach and subject it to the payment of his debt. But if it were conceded that the surrender contemplated by that clause of the policy could be made by anyone other than the assured, it will be observed that no steps were taken in the lifetime of the assured to carry out that provision, and, upon

his death, any such inchoate right was merged in the higher right of the personal representative of the assured to demand the full face value of the policy. In other words, the conditions necessary to enable the execution creditor to avail himself of the provision, if indeed he could have done so under any circumstances, as to which we express no opinion, did not arise. This suit was not brought until after the death of the assured, when it was too late to invoke the aid of a court of equity to carry out that stipulation for the benefit of a creditor, because under the terms of the policy, the time had then passed when that provision was operative for any purpose.

For these reasons, we are of the opinion that the *fi. fa.* in the hands of the appellant did not operate as a lien upon the policy in question, because, under the terms of the policy, there was no existing indebtedness against the company in favor of the assured to which such a lien could attach. The decree appealed from must, therefore, be affirmed.

*Affirmed.*

CARDWELL, J., concurs in results.