In the Matter of SUTPHIN AND
VAUGHN CONSTRUCTION
COMPANY, Inc.
No. 64–BK–469–R.

United States District Court
W. D. Virginia,
Roanoke Division.
Sept. 30, 1969.

John B. Spiers, Jr., Spiers, Spiers & Mink, Radford, Va., for petitioner.

Robert S. Irons, Roanoke, Va., Trustee in Bankruptcy for Sutphin and Vaughn Const. Co., Inc.

## OPINION

WIDENER, District Judge.

This case is here on petition for review from the ruling of the Referee in Bankruptcy that a payment of $7,958.06 on a $10,000.00 note held by the Peoples Bank (predecessor of the Bank of New River Valley) was a voidable preference under Section 60 of the Bankruptcy Act, 11 U.S.C. Sec. 96.

Sutphin and Vaughn Construction Company, Inc., filed its voluntary petition in bankruptcy August 18, 1964, under pauper's oath. I. Fred Sutphin was president of the corporation and Walter L. Vaughn was its secretary and treasurer. It had been a partnership and then incorporated. Sutphin and Vaughn and their wives owned all the stock.

The corporation was in the residential construction business and maintained its bank account at the Peoples Bank, the predecessor of the Bank of New River Valley. It had credit dealings with the bank for sometime prior to the bankruptcy. On August 8, 1963, one Everett

E. Rose had approved a direct loan from the Veterans Administration in the amount of $13,000.00 for the construction of a dwelling house, the total cost of which was $14,650.00. Prior to that time, Rose had entered into a construction contract with the bankrupt to build the house on a lot which was owned by Rose.

On February 1, 1964, bankrupt borrowed, on a demand note from Peoples Bank of Radford, the sum of $10,000.00. The note was signed by Fred Sutphin as president, and a notation made on the top of the note indicates "V.A. Commitment, Everett E. Rose, JA #DL 118084 Ro". The money was deposited into bankrupt's account at Peoples Bank of Radford.

The bank's ledger card on the loan indicates under a blank entitled "Security," "V.A. Commitment, Everett E. Rose, JA #DL 118084 Ro" and shows under a blank entitled "Co-Maker," "Fred Sutphin, Pres."

The minutes of the bank directors dated February 13, 1964, indicate: "Sutphin and Vaughn, $3,000.00, deed of trust real estate, approved. Also V.A. assignment $10,000.00, approved."

A carbon copy of a letter from the Veterans Administration to Rose approving the application for a loan contains no notation indicating any assignment, and is in fact the carbon copy sent by the Veterans Administration to the builder.

Rose, to whom the commitment was made, did not have any knowledge about any relationship between the Peoples Bank and Sutphin and Vaughn until the day the settlement for his house was made, and he became aware that money was being paid by the closing attorney to the Peoples Bank.

John N. Dalton, an attorney in Radford, was the closing attorney in the transaction as appointed by the Veterans Administration; so it must be considered that he was acting both for the Veterans Administration and for Rose. Prior to the time the $10,000.00 loan was made, Dalton was called on the telephone by

John L. Whitehead, President of Peoples Bank of Radford, and told that the bank was lending to the bankrupt the sum of $10,000.00 and that there was no deed of trust on the property because the title was in Rose. He asked Dalton to keep the bank advised when the loan was going to be closed for it was due $10,000.00 that it had advanced as construction money on the Rose job. It is very doubtful if all the $10,000.00 went into the job.

Whitehead never did mention an assignment to Dalton. This fact is quite clear from Dalton's testimony, and since Whitehead also testified and did not claim that he notified Dalton of any assignment, the omission is all the more remarkable. Whitehead did tell Dalton the bank wanted to be paid when the Rose loan proceeds were distributed.

Following the conversation or conversations between Dalton and Whitehead, Dalton, on January 31, 1964, wrote Whitehead the following letter.

"This is to acknowledge our telephone conversation today concerning Sutphin & Vaughn's loan for the Everett E. Rose house. At the time Mr. Rose's GI loan is closed, we shall be in touch with you and determine how much money is due People's Bank."

On April 27, 1964, the bank loaned $25,000.00 to Sutphin and wife, and Vaughn and wife, which was credited to the account of Sutphin and Vaughn Construction Company. The bank had refused to lend the money to the bankrupt, and it was secured by a deed of trust on real property of the makers of the note. All the assets the company owned at that time were not enough collateral for a $25,000.00 loan, and the bank knew this. Some car or truck titles had been left with the bank in February but had not been signed to indicate a lien under Virginia law. The bank ledger card on this loan is under Sutphin and Vaughn Construction Company.

The financial condition of the company became worse, and on July 29, 1964, Peoples Bank demanded additional collateral for the $25,000.00 loan, and the automobile titles which were the property of the Sutphins and Vaughns individually were signed to give the bank additional collateral for the $25,000.00 loan.

On August 7, 1964, Dalton, the attorney for Rose and the Veterans Administration, out of his account into which the $13,000.00 VA loan had been deposited, paid off twelve mechanics liens filed against Sutphin and Vaughn on the Rose job in the amount of $6,484.44 from the proceeds of the VA loan of $13,000.00, and additional money of Rose, and on August 11, 1964, made a check for $7,958.06 to Sutphin and Vaughn and the Peoples Bank. The bankrupt endorsed the check, and the bank took the check and credited $7,958.06 on the $10,000.00 note. At the time the bank received the money, it was told that it would not be paid in full on the $10,000.00 loan, certainly giving the bank reasonable cause to believe that Sutphin and Vaughn was insolvent at the time of the payment. The bank knew of Dalton's payment of the mechanics liens at the time it was paid.

On August 12, 1964, Peoples Bank filed an attachment suit in the Circuit Court of the City of Radford in which the bank swore "that said corporation is insolvent." The bank officials said no information other than street rumors that Sutphin and Vaughn was shaky had come to them between July 29th and August 11th indicating insolvency of Sutphin and Vaughn. This is belied, however, in that Robert A. Hall, Vice President and Cashier of the bank, testified that prior to August 11th he knew that various mechanics liens had been filed against the bankrupt, and the bank knew that Dalton had paid off mechanics liens on the Rose job on August 7, 1964.

The schedules in bankruptcy indicate debts of $99,955.82 and assets of $34,230.00, of which latter sum $28,800.00 was due on executory contracts. At the time of filing its petition Sutphin and Vaughn Construction Company was hopelessly insolvent, and had been insolvent for at least several weeks. The slightest diligence on the part of the bank would have disclosed this.

Although both Sutphin and Vaughn testified at the hearing, neither of them was asked about any assignment of the Rose loan proceeds to the bank. Rose did not know of any assignment. Dalton did not mention any assignment. The evidence is overwhelming, and this court finds as a fact, as did the Referee, that there was no assignment of the Rose loan proceeds to the Peoples Bank to secure the payment of the $10,000.00 note. The most that can be said of the transaction is that it was a rather loose agreement to pay the bank out of the funds received from the Veterans Administration and that Rose was not a party to this agreement. Dalton's letter is quite carefully drawn and distinctly avoids any mention of assignment.

This court further finds as a fact, as did the Referee, that the bank knew, or had reasonable cause to believe, that Sutphin and Vaughn Construction Company was insolvent at the time it received the payment of $7,958.06 on August 11, 1964.

The contentions of the Peoples Bank in its petition for review follow.

First: there existed a valid, legal or equitable assignment of the Rose funds in favor of the bank to secure the $10,-000.00 loan.

The court does not agree with this contention. Neither Sutphin nor Vaughn in their testimony mentioned any assignment. Neither did Whitehead nor Hall, the bank's officials, nor Dalton, the attorney for Rose and the Veterans Administration. Rose did not know of it. No paper writing nor oral assertion by anyone with authority to make it indicates any assignment of the fund. Rose never accepted any assignment nor did his attorney. In the absence of any evidence indicating an assignment, the claim that there is a legal assignment of the fund is untenable.

The claim that there was an equitable assignment of the fund is also not supported by the evidence. The instant case is quite similar to the case of Hicks v. Roanoke Brick Co., 94 Va. 741, 27 S.E. 596 (1897). In that case, the Virginia court said:

"But a mere promise or agreement to pay a debt out of a designated fund, when received, does not give an equitable lien upon the fund, nor operate as an equitable assignment of it. Something more is necessary. To constitute an equitable assignment, there must be an assignment or transfer of the fund, or some definite portion of it, so that the person owing the debt or holding the fund on which the order is drawn can safely pay the order, and is compellable to do so, though forbidden by the drawer."

In the *Hicks* case the contractor gave no order to his creditor on the City of Roanoke which was to pay him the money. In the instant case the contractor gave no order to the Peoples Bank on Rose who was to pay it the money prior to the time of closing the loan in Dalton's office on August 11th.

The *Hicks* case was overruled on another point in Boisseau v. Bass, 100 Va. 207, 40 S.E. 647, 57 L.R.A. 380 (1902), but was followed by the Virginia court on the point here in question in Nusbaum & Co. v. Atlantic Realty, 206 Va. 673, 146 S.E.2d 205 (1966).

While in Virginia, an assignment need take no particular form, "* * * the intent to transfer a present ownership of the subject matter of the assignment to the assignee must be manifested." 206 Va. 673, 681, 146 S.E.2d 205, 210. No such intent was manifested here.

The claim of assignment, either legal or equitable, or written or oral, is not supported by the evidence in this case.

The second contention of the bank is that the Referee held that it had knowledge of the insolvency of the bankrupt in February 1964. The court does not so construe the finding of the Referee. Knowledge of insolvency of the bankrupt in February is immaterial in the consideration of whether or not to set aside the preference, because it is not the claimed February assignment which is

set aside here, it is the preferential payment of August 11th.

■ The third contention of the bank is that knowledge concerning insolvency must be on the date of the original loan rather than the date payment was received. This contention is in the teeth of the express language of Section 60(b) of the Bankruptcy Act which is as follows:

"Any such preference may be avoided by the trustee if the creditor receiving it or to be benefited thereby or his agent acting with reference thereto has, at the time when the transfer is made, reasonable cause to believe that the debtor is insolvent." 11 U.S.C.A. § 96(b).

■ Not only the statute as above quoted, but the text authorities and the case law do not support an assertion that actual knowledge of insolvency is necessary.

Knowledge of insolvency is not necessary, not even actual belief thereof; all that is required is a reasonable cause to believe that the debtor was insolvent at the time of the preferential transfer. 3 Collier on Bankruptcy, 14th Ed., p. 1057, General Electric Credit Corporation v. Davis, 224 F.2d 322 (C.A. 4th, 1955).

The fourth contention of the bank is that the Referee held there was no consideration for any such assignment. The court does not understand the ruling of the Referee to be to that effect. The Referee held that there was not any assignment. The court agrees with the Referee's finding of fact on this point.

The last contention of the bank is that the Referee erroneously ruled that no privity existed between Rose and the bank. The court agrees with the Referee's finding of fact on this point. The record is clear that Rose had nothing to do with the bank until the day his loan proceeds were disbursed by Dalton. Rose never had any communication to or from the bank.

The position of the bank, that it accepted an assignment of the loan proceeds as collateral for a $10,000.00 demand note without a scratch of the pen or even the oral agreement of Rose, the owner of the loan proceeds, strains belief. To the credit of both bank officials who testified in this proceeding, neither of them claimed it in his testimony.

■ Although not enumerated in the grounds for review as set forth in the petition, it is argued that the payment by Rose to the bank was not a preferential payment because the funds did not pass through the hands of Sutphin and Vaughn Construction Company which only endorsed the check. The court does not agree with this contention. The payment by Rose with a check payable both to Sutphin and Vaughn and to the bank diminished the estate of the bankrupt, and resulted in a lower payment to other general creditors and a higher payment to the bank, as surely as if the check had been made only to Sutphin and Vaughn which had immediately paid the bank with its own check. The bank obtained a greater percentage of its debt than other creditors in the same class. 11 U.S.C. § 96(a) (1). Aulick v. Largent, 295 F.2d 41 (1961).

■■ On August 12, 1964, the bank filed a motion for judgment against the bankrupt alleging in part that bankrupt had agreed to, but had not, assigned the proceeds of the Rose Veterans Administration loan as security for the $10,000.00 loan. The motion for judgment was signed by John A. Spiers, Jr., as attorney for the bank. Spiers was also a director of the bank. The Trustee contends this is admissible evidence against the bank. Of course, if it is admissible, there would be little left to the contention of the bank that an assignment was made. The court is of opinion that the motion for judgment of August 12, 1964, is not admissible, and did not take it into account in reaching a decision. Conversely, the court is of opinion that a petition for attachment filed August 12, 1964, stating in part that Sutphin and Vaughn was insolvent, which petition was signed and sworn to by the Vice President and Cash-

ier of the bank, is admissible against the bank. Wigmore on Evidence, 3d Ed., § 1066.

An order is this day entered affirming the decision of the Referee.