suant to 11 U.S.C. §§ 507(a)(1) and 503(b)(1)(A).

**In re John A. ANDREWS, Debtor.**

**Bankruptcy No. 92–14879–AT.**

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

June 19, 1997.

Brian F. Kenney, Miles & Stockbridge, McLean, VA, for NationsBank, N.A.

Mark R. Herring, Turner, Parks & Herring, Leesburg, VA, for John A. Andrews, II.

Richard Hall, Annandale, VA, Chapter 7 Trustee.

· Wayne Travell, Tucker, Flyer & Lewis, Washington, DC, for Debtor.

## *MEMORANDUM OPINION*

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

On May 7, 1997, the court held a hearing on an objection filed by NationsBank, N.A. to a claim against the bankruptcy estate which had been assigned by First American Bank of Virginia to John A. Andrews II.[1]   After

---

1. In its objection filed on April 10, 1997, NationsBank had questioned both the amount of the claim and the classification of the claim as secured.   On May 1, 1997, however, Andrews II amended the amount of his claim to conform with NationsBank's objection.   In proposed findings of fact and conclusions of law submitted on June 6, 1997, NationsBank acknowledged that its objection to the amount has become moot and

the parties stipulated to the facts underlying this matter, the court heard oral argument from counsel and then took the matter under advisement. For the reasons set forth in this memorandum opinion, the court will overrule the objection in part and will sustain the objection in part.

### Findings of Undisputed Fact and Procedural History

This particular claim asserted by John A. Andrews II against the bankruptcy estate arose from three judgments confessed by First American Bank of Virginia against the debtor (a Virginia resident) in the Circuit Court of Fairfax County, Virginia: (1) a judgment entered on May 10, 1991, in the principal amount of $1,275,000.00 (the "Guaranty Judgment"); (2) a judgment entered on September 13, 1991, in the principal amount of $500,000.00 (the "Line of Credit Judgment"); and (3) a judgment entered on September 19, 1991, in the principal amount of $137,333.36 (the "Lone Oak Judgment").

In 1992, First American caused writs of fieri facias to be issued on each of the three judgments: (1) with regard to the Guaranty Judgment, one writ was delivered to the Sheriff of Fairfax County on May 6, 1992, with a return date of June 22, 1992; (2) with regard to the Line of Credit Judgment, thirteen writs were delivered to the Sheriff of Fairfax County, the last being on August 3, 1992, with a return date of October 26, 1992; and (3) with regard to the Lone Oak Judgment, two writs were delivered to the Sheriff of Fairfax County on May 11, 1992, with a return date of June 22, 1992.

On October 17, 1992, the debtor filed this petition under Chapter 7 of the Bankruptcy Code. First American then filed a timely proof of claim, the rights to which were assigned to Andrews II in September 1993. The assets currently held by the Chapter 7 trustee include: (1) approximately $310,000.00 in payments from Tarmac Mid–Atlantic, Inc. under a non-competition agreement

with the debtor dated July 17, 1989;[2] and (2) approximately $300,000.00 from the post-petition settlement of a malpractice claim which arose prior to 1992 and which was asserted by the debtor against the law firm of Shaw Pittman Potts & Trowbridge in the Superior Court of the District of Columbia.[3]

### Discussion and Conclusions of Law

Under the law of Virginia, a money judgment can be enforced by causing a writ of fieri facias to be issued by the clerk of the court and to be delivered to a "proper officer" of the court. *United States v. Harkins Builders, Inc.*, 45 F.3d 830, 833 (4th Cir.1995) (citing Va.Code § 8.01–466). The writ commands the officer "to make money therein mentioned out of the goods and chattels of the person against whom the judgment is." *Id.* (quoting Va.Code § 8.01–474). When property by its nature is incapable of being levied by the officer, a lien nonetheless is created upon delivery of the writ to the officer. *Id.* (citing Va.Code § 8.01–501). Though extending "throughout the limits of the Commonwealth," Va.Code § 8.01–481, this lien attaches "only to the extent that the judgment debtor has a possessory interest in the intangible property subject to the writ." *International Fidelity Ins. Co. v. Ashland Lumber Co.*, 250 Va. 507, 463 S.E.2d 664, 666–67 (1995).

In this case, Andrews II contends that the writs of fieri facias issued pre-petition created a lien which has attached both to the payments from Tarmac and to the proceeds from the settlement with Shaw Pittman. This argument is grounded in Va.Code § 8.01–501, which in pertinent part provides:

> Every writ of fieri facias shall ... be a lien from the time it is delivered to the sheriff ... to be executed, on all the personal estate of or to which the judgment debtor is, or may afterwards and on or before the return day of such writ become, possessed or entitled, in which, from its nature is not capable of being levied on....

---

indicated that only its objection to the claim's secured status remains outstanding.

2. Under the non-competition agreement, Tarmac promised to pay the debtor $1,000,000.00 in quarterly installments of $62,500.00 plus interest

at the rate of 10%. Only one installment was paid, however, prior to October 1992.

3. The court approved this settlement in an order entered on April 2, 1997.

Andrews II construes the term "personal estate" as encompassing "a debt payable in the future and ... all choses in action to which a debtor may be entitled." *In re Lamm*, 47 B.R. 364, 367 (E.D.Va.1984). Insofar as both the debt owed by Tarmac and the claim against Shaw Pittman arose "on or before the return date" of the writs, Andrews II concludes that the funds which have flowed from these property interests of the debtor remain subject to his lien.

The question before this court, therefore, is whether the lien created by a writ of fieri facias under Va.Code § 8.01–501 attaches to a debt which will be paid in future installments and to a chose in action. While the dicta from *Lamm* appears to be precisely on point, the court thinks it important to make an independent inquiry into the Virginia case law upon which the district court relied. *See United States Fire Ins. Co. v. Harris (In re Harris)*, 155 B.R. 135, 136 (Bankr.E.D.Va. 1993), *aff'd*, 162 B.R. 466 (E.D.Va.1994) (maintaining that, "[w]hile a district court's ruling should be given deference, it is not necessarily controlling on this court under the *stare decisis* doctrine"); *Gould v. Bowyer*, 11 F.3d 82, 84 (7th Cir.1993) (holding that "[a] district court decision binds no judge in any other case, save to the extent that the doctrines of preclusion (not stare decisis) apply"); *Carolina Clipper, Inc. v. Axe*, 902 F.Supp. 680, 684 n. 3 (E.D.Va.1995) (noting that, "where a court does not squarely address the issue at hand, dictum should not be relied upon as dispositive on the issue as it was not the question before the court").

*The Payments from Tarmac*

With regard to the payments from Tarmac, the court must consider whether a debtor's "personal estate" under Va.Code § 8.01–501 includes a debt which, while in existence "on or before the return date," will not be repaid until after the return date. The seminal decision on this issue is *Boisseau v. Bass' Adm'r*, 100 Va. 207, 40 S.E. 647 (1902). In *Boisseau*, the Virginia Supreme Court of Appeals held that an insured does not have the requisite possessory interest in a life insurance policy which has no present market value and which is dependent for its continued existence on the insured's volun-

tary payment of future premiums. In reaching this result, the court ruled: "When a debt has a present existence, although payable at some future day, it is subject to the lien of a *fi. fa.*, and may be reached by garnishment or other appropriate proceeding; but the rule is otherwise where the debt rests upon a contingency that may or may not happen, and over which the court has no control." *Id.*, 100 Va. at 210, 40 S.E. 647.

In the case before this court, the debt owed by Tarmac to the debtor arose well before the return date of the writs on July 17, 1989—the date on which the parties entered into the non-competition agreement. Having thoroughly inspected that agreement, the court finds that this $1,000,000.00 obligation was absolute. In other words, while made "in consideration for" the debtor's promise not to compete, Tarmac's financial covenant was not "contingent upon" the debtor's performance. Even if the debtor prematurely began to compete in contravention of the agreement, Tarmac remained bound to pay its quarterly installments in full until injunctive relief could be obtained or until the burden of proving a right of setoff could be carried.

NationsBank makes much of the fact that, aside from the first installment of $62,500.00, Tarmac did not have a duty to remit any funds to the debtor until after the return date of the writs had passed. NationsBank therefore maintains that, prior to filing his bankruptcy petition, the debtor became "possessed" of and "entitled" to only that single payment from Tarmac. The court, however, already has noted that the lien established under Va.Code § 8.01–501 attaches to a debt which is owed by a third party to the debtor and which arises prior to the return date of the writ, even though payment on that debt will not be received by the debtor until after the return date. Moreover, while it is true that the return date limits both the time in which a summons in garnishment might be issued as well as the life-span of the writ itself, NationsBank erroneously presumes that the return date similarly circumscribes the lien created by the writ.

Pursuant to Va.Code § 8.01–505, the lien which arises from a writ of fieri facias persists until

> the right of the judgment creditor to enforce the judgment by execution or by action, or to extend the right by motion, ceases or is suspended by a forthcoming bond being given and forfeited or by other legal process. Furthermore, as to all such intangibles the lien shall cease upon the expiration of the following periods whichever is the longer: (i) one year from the return day of the execution pursuant to which the lien arose, or (ii) if the intangible is a debt due from, or claim upon, a third person in favor of the judgment debtor or the estate of such third person, one year from the final determination of the amount owed to the judgment debtor.

Since the court has no evidence that Tarmac ever disputed the amount owed under the non-competition agreement, the longer of the two periods in this case is one year from the return date of the writs. This translates as follows: (1) with regard to the Guaranty Judgment, the lien would have expired under Virginia law on June 22, 1993; (2) with regard to the Line of Credit Judgment, the lien would have expired under Virginia law on October 26, 1993; and (3) with regard to the Lone Oak Judgment, the lien would have expired under Virginia law on June 22, 1993.

■ The debtor's filing of his bankruptcy petition on October 17, 1992, however, suspended such an operation of Virginia law. In *Homeowner's Fin. Corp. v. Pennington (In re Pennington)*, 47 B.R. 322, 327 (Bankr. E.D.Va.1985), the court held that, "if a creditor's lien is extant under state law prior to commencement of the bankruptcy, the lien remains viable even if under the terms of the law creating the lien it would expire absent some action of the creditor." A creditor in bankruptcy, therefore, is not "obliged to seek relief from the stay in order to seek a new writ of *fieri facias* to keep the lien in effect" post-petition.

The court therefore concludes (1) that the debtor's "personal estate" included his right to the payments owed by Tarmac under the non-competition agreement; (2) that, under the standard set forth in *Boisseau*, the lien created by the pre-petition writs of fieri facias attached to this interest and to all the payments received from Tarmac prior to the lien's extinction; and (3) that, pursuant to the decision in *Pennington*, the lien has not been terminated by the operation of Virginia law but instead has remained in effect throughout the course of the debtor's bankruptcy case.[4]

### The Claim Against Shaw Pittman

■ With regard to the malpractice claim against the Shaw Pittman law firm, the court must consider whether a debtor's "personal estate" under Va.Code § 8.01–501 includes a chose in action which arose prior to the execution of a writ of fieri facias. Dicta in opinions from several federal courts in Virginia hint that this question should be answered in the affirmative. *See Lamm,* 47 B.R. at 367; *Canfield v. Simpson (In re Jones),* 47 B.R. 786, 788–89 (Bankr.E.D.Va. 1985); *In re Dulaney,* 29 B.R. 79, 82 (Bankr. W.D.Va.1982). In addition, a well-respected treatise on Virginia law states quite succinctly that "[t]he lien of a fieri facias includes all choses in action to which the debtor is entitled." 8A Michie's Jurisprudence of Virginia and West Virginia *Executions* § 32 (1977).

All of these authorities directly or indirectly rely for their position on *Evans v. Greenhow,* 56 Va. (15 Gratt.) 153, 162 (1859), where the Virginia Supreme Court of Appeals ruled that a lien upon a chose in action could be acquired under the predecessor to Va.Code § 8.01–501. At least one federal court, however, has found cause to question the continuing vitality of this decision. In *Eanes v. Shepherd,* 33 B.R. 984 (W.D.Va.1983), *rev'd on other grounds,* 735 F.2d 1354 (4th Cir. 1984), the district court considered whether a debtor could exempt from the bankruptcy estate a personal injury cause of action. When the creditors contended that their writ

4. This lien was perfected when the writs of fieri facias were delivered to the Sheriff of Fairfax County to be executed. *In re Wilkinson,* 196 B.R. 311, 319 (Bankr.E.D.Va.1996). Therefore, the interest of Andrews II in the Tarmac payments is superior to that of the Chapter 7 trustee as a hypothetical lien creditor under 11 U.S.C. § 544.

of fieri facias had created a lien which attached to the debtor's chose in action, the court noted that the theory was "necessarily premised upon the ground that Virginia Code § 8.01–501 is broad enough to include" such an interest. *Id.* at 988. The court then turned to *Boisseau* and noted that the Virginia Supreme Court of Appeals had "specifically excluded contingent claims as property subject to the lien under Va.Code § 8.01–501." *Id.* The court thus concluded that the lien does not extend to contingent and unliquidated causes of action.

I can conceive of no other reasonable reading or construction of the language employed in *Boisseau,* and therefore, I must concur with the conclusion reached by the district court in *Eanes.* This court holds, then, that the Virginia Supreme Court would consider *Boisseau* as having effectively overruled *Evans* to the extent that the debtor's "personal estate" under Va.Code § 8.01–501 was deemed to encompass a chose in action. *See Powell v. United States Fidelity & Guar. Co.,* 855 F.Supp. 858, 861 (E.D.Va.1994), *aff'd,* 88 F.3d 271 (4th Cir.1996) (noting that, when considering an issue of Virginia law, a federal court must ascertain the ruling which the Virginia Supreme Court would make on the same issue). Applying the holding to this case, the court finds that the lien held by Andrews II does not extend to the proceeds of the settlement reached between the Chapter 7 trustee and Shaw Pittman.

### Conclusion

For the reasons set forth above, then, the court will enter a separate order (1) overruling NationsBank's objection to the extent that Andrews II asserted a claim secured by a lien on the non-competition payments received from Tarmac and (2) sustaining NationsBank's objection to the extent that Andrews II asserted a claim secured by a lien on the proceeds from the Chapter 7 trustee's settlement with Shaw Pittman.

### *ORDER*

On May 7, 1997, the court held a hearing on an objection filed by NationsBank, N.A. to a claim against the bankruptcy estate which had been assigned by First American Bank of Virginia to John A. Andrews II. After the parties stipulated to the facts underlying this matter, the court heard oral argument from counsel and then took the matter under advisement. For the reasons set forth in the memorandum opinion accompanying this order, the objection will be overruled in part and will be sustained in part.

IT IS THEREFORE ORDERED that the claim, assigned by First American Bank of Virginia to John A. Andrews II, is secured by lien on the payments made by Tarmac Mid–Atlantic, Inc. under a non-competition agreement with the debtor dated July 17, 1989, and

IT IS FURTHER ORDERED that the claim, assigned by First American Bank of Virginia to John A. Andrews II, is not secured by lien on the proceeds from the post-petition settlement of a malpractice claim asserted by the debtor against the law firm of Shaw Pittman Potts & Trowbridge.

