PRESENT: All the Justices

ELIZABETH SHIFFLETT, ET AL.

v. Record No. 161290

LATITUDE PROPERTIES, INC., ET AL.

OPINION BY
JUSTICE CLEO E. POWELL
December 14, 2017

FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
Thomas J. Wilson, IV, Judge

In this appeal, we consider whether a judgment creditor may obtain a lien by writ of fieri facias on monies from future income tax refunds when a debtor has yet to file his or her income tax returns.

## I. BACKGROUND

The facts are undisputed. Latitude Properties, Inc. and Shen Valley Band Instrument Service, Inc. (collectively, "Creditors") obtained separate judgments against Rodney and Elizabeth Shifflett and Cassandra Deane (collectively, "Debtors").[1] Creditors issued to Debtors writs of fieri facias along with summonses to answer interrogatories. Upon the return date for the writs, January 5, 2016, based on the answers to the interrogatories, the Harrisonburg/Rockingham General District Court ("general district court") entered transfer orders in favor of Creditors requiring Debtors turn over their 2015 income tax refunds to Creditors upon receipt of funds or to demonstrate that a refund would not be received. The

---

[1] The underlying cases were filed separately, but because the issues are identical and the transfer orders were entered on the same date, the circuit court, hearing the appeals from general district court, jointly decided the cases by agreement of the parties.

transfer orders were appealed to the Circuit Court of Rockingham County (hereinafter "circuit court").

In circuit court, upon motions for summary judgment, Debtors argued that the general district court lacked subject matter jurisdiction to enter the transfer orders as it was undisputed that Debtors had not filed their 2015 income tax returns as of the return date of the writ. Debtors argued their expected 2015 income tax refunds were contingent interests in property not subject to a lien under Code § 8.01-501. In a letter opinion dated May 13, 2016, the circuit court ruled in favor of Creditors, finding that Debtors

> held a fixed property interest in their 2015 tax refunds as of midnight of December 31st of 2015. Consequently, the liens of fieri facias attached to those funds. Additionally, [] Code § 8.01-507 authorized the General District Court to enter the transfer orders, irrespective of that lien.

The circuit court also found that "[a] tax refund is an intangible 'under the control of the debtor,' as the debtor makes the ultimate decision on whether to file a tax return." By joint order incorporating its letter opinion, the circuit court dismissed Debtors' appeals with prejudice.

Debtors moved for reconsideration arguing that an intangible personal estate contemplated by Code §§ 8.01-501 and -507 does not include an income tax refund if the taxpayer has not filed a tax return. The circuit court denied the motion. This appeal followed.

## II. ANALYSIS

On appeal, Debtors argue that the circuit court erred in dismissing their appeals with prejudice and applying the orders of the general district court levying upon their potential 2015 income tax refunds because both courts lacked authority to exercise any power under Code §§ 8.01-501 and -507. Debtors assert that they were not entitled to a refund within the meaning

2

of Code § 8.01-501 and lacked "possession" or "control," as required by Code § 8.01-507, over their 2015 income tax refunds as they had yet to file 2015 income tax returns.

Creditors respond that the circuit court properly granted summary judgment and dismissed the appeals. Creditors argue that Debtors' 2015 income tax refunds were intangible property interests that vested as of the close of the 2015 tax year, December 31, 2015, regardless of whether Debtors had filed their 2015 income tax returns.

"[S]ummary judgment 'shall not be entered' unless no 'material fact is genuinely in dispute' on a controlling issue or issues and the moving party is entitled to such judgment as a matter of law." *Mount Aldie, LLC v. Land Trust of Va., Inc.*, 293 Va. 190, 196, 796 S.E.2d 549, 553 (2017) (quoting Rule 3:20). "Thus, in an appeal of a decision awarding summary judgment, the trial court's determination that no genuinely disputed material facts exist and its application of law to the facts present issues of law subject to de novo review." *Id*. at 196-97, 796 S.E.2d at 553.

Code §§ 8.01-501 and -507 establish a procedure by which a judgment creditor may seek to collect on a debt against a judgment debtor. Code § 8.01-501 provides, in pertinent part, that

> Every writ of fieri facias shall . . . be a lien from the time it is delivered to a sheriff or other officer, or any person authorized to serve process pursuant to § 8.01-293, to be executed, on all the personal estate of or to which the judgment debtor is, or may afterwards and on or before the return day of such writ or before the return day of any wage garnishment to enforce the same, become, possessed or entitled, in which, from its nature is not capable of being levied on under such sections.

Code § 8.01-507 provides:

> Any real estate out of this Commonwealth to which it may appear by such answer that the debtor is entitled shall, upon order of the court or commissioner, be forthwith conveyed by him to the officer to whom was delivered such fieri facias, and any money, bank notes, securities, evidences of debt, or other personal estate, tangible or intangible, which it may appear by such answers are in

3

> possession of or under the control of the debtor or his debtor or
> bailee, shall be delivered by him or them, as far as practicable, to
> such officer, or to some other, or in such manner as may be
> ordered by the commissioner or court.

A judgment creditor cannot proceed against intangible property "without a valid lien on that property by writ of fieri facias." *International Fidelity Ins. Co. v. Ashland Lumber Co.*, 250 Va. 507, 511, 463 S.E.2d 664, 666 (1995).

> The writ of fieri facias creates a lien in favor of the judgment
> creditor only to the extent that the judgment debtor has a
> possessory interest in the intangible property subject to the writ.
> Accordingly, when the judgment debtor has no interest in the
> property . . . , the writ does not create a valid lien on that property.

*Id.* at 511, 463 S.E.2d at 666-67.

We have not addressed the issue of whether a prospective income tax refund can be the subject of a writ of fieri facias under Code § 8.01-501 and be reached under Code § 8.01-507 if the debtor has indicated that he expects a refund but has not filed an income tax return. Both the circuit court and the appellees rely heavily on bankruptcy cases. We find the bankruptcy cases instructive but not dispositive.

The Creditors rely on *In re Sexton*, 508 B.R. 646 (Bankr. W.D. Va. 2014), for the proposition that a debtor's interest in an income tax refund vests at midnight on December 31. In *Sexton*, the debtor filed for Chapter 7 liquidation on February 13, 2013 and listed an anticipated 2012 federal tax refund as an asset of her estate. Thereafter, the Department of the Treasury (the "Treasury") notified Sexton that it would be withholding her tax refund in order to apply it to the debt she owed to the United States Department of Agriculture Rural Development Service ("DOA"). Sexton sought to enforce the automatic bankruptcy stay of 11 U.S.C. § 362(a) against the DOA. The DOA argued that because "Sexton only possessed a contingent interest in the

4

overpayment" it did not become property of the bankruptcy estate under the protection of the automatic stay. *In re Sexton*, 508 B.R. at 652.

In addressing the argument, the bankruptcy court defined the issue as what kind of interest a debtor has in a tax overpayment and to what extent is that interest a part of the debtor's bankruptcy estate. The bankruptcy court stated that Sexton's right to recover her tax refund arose for the 2012 tax year at midnight on December 31, 2012.

> By filing her bankruptcy petition on February 13, 2013, which was prior to the Secretary of the Treasury redirecting her overpayment to the Department of Agriculture [the creditor], all of Ms. Sexton's eligible property, including her interest in the overpayment, vested in her bankruptcy estate and instantly acquired the protections of the automatic stay.

*Id.* at 662. The bankruptcy court found "that a debtor's interest in her tax overpayment becomes fixed at the close of the relevant tax year *for the purposes of bankruptcy law*. At that point, the amount of overpayment is discernible, and the debtor is entitled to recover that amount from the government." *Id.* at 663 (emphasis added). By its terms, *Sexton* dealt solely with whether income tax overpayments become part of the bankruptcy estate and did not address the issue presented here.

The outcome in *Sexton* relied heavily on the nature of the bankruptcy estate. For purposes of defining the bankruptcy estate the bankruptcy code is expansive. The bankruptcy code defines "'estate' liberally to include all property interests of the debtor at the time she files her petition, irrespective of whether the property interests are legal or equitable, tangible or intangible, or vested or contingent." *Id.* at 656 (quoting 11 U.S.C. § 541(a)). "[E]very conceivable interest of the debtor, future, nonpossessory, contingent, speculative and derivative is within the [bankruptcy estate]." *Id.* at 657 (citing *In re Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993)). While an income tax overpayment becomes part of the bankruptcy estate at midnight on

5

December 31, that is only to acquire the protections of the automatic stay that is implemented to protect the bankruptcy estate's holdings. *See* 11 U.S.C. § 362(a).

Unlike bankruptcy law, however, the scope of a property interest for purposes of a fieri facias lien under Virginia law is much narrower. By its terms, Code § 8.01-501 limits the property to which a creditor's lien can attach to property of which the debtor is "possessed" or to which the debtor is "entitled." Moreover, Code § 8.01-507 differs from bankruptcy law in that it defines the property that may be delivered to the sheriff for delivery to the creditor as "any money, bank notes, securities, evidences of debt, or other personal estate, tangible or intangible, which it may appear by such [interrogatory] answers are *in possession of or under the control* of the debtor or his debtor or bailee." (Emphasis added.) "'When the language of a statute is unambiguous, we are bound by the plain meaning of that language. Furthermore, we must give effect to the legislature's intention as expressed by the language used unless a literal interpretation of the language would result in a manifest absurdity.'" *Butler v. Fairfax Cty. Sch. Bd.*, 291 Va. 32, 37, 780 S.E.2d 277, 280 (2015) (quoting *Payne v. Fairfax Cty. Sch. Bd.*, 288 Va. 432, 436, 764 S.E.2d 40, 43 (2014)). "Entitle" is defined as: "to give a right or legal title to." Webster's 3rd International Dictionary 758 (1993). "Possession" is defined as: "the act or condition of having in or taking into one's control or holding at one's disposal." *Id*. at 1770.

Here, the Debtors would have been entitled to tax refunds only *after* filing their federal income tax returns. Debtors had not filed their 2015 federal income tax returns. Therefore, they were not entitled to funds from the IRS, nor were they in possession or control of the 2015 income tax refunds. Creditors could therefore not obtain a property interest in income tax refunds that were not possessed by or in the control of the Debtors. The 2015 income tax refunds amounted to an inchoate property interest. Inchoate is defined as "not yet perfected; not

6

yet made certain or specific; and not vested." *Id*. at 1142. Debtors had not filed 2015 income tax returns; therefore, Debtors did not have a vested property interest in their potential 2015 income tax refunds.[2] Any 2015 income tax refunds owed to Debtors, was in the possession or control of federal and state governments. Thus, the property interest of the debtor was at best contingent upon the filing of an income tax return.

Unlike bankruptcy law, which for some purposes reaches "contingent interests," we have held as far back as *Boisseau v. Bass*, 100 Va. 207, 40 S.E. 647 (1902), that a debtor's interest in property that is uncertain or contingent is not subject to a fieri facias lien. "When a debt has a present existence, although payable at some future day, it is subject to the lien of a fi[eri] fa[cias], . . . but the rule is otherwise where the debt rests upon a contingency that may or may not happen, and over which the court has no control." *Boisseau*, 100 Va. at 210, 40 S.E. at 649.

---

[2] We also note that, as a practical matter, while a taxpayer's potential right to receive a refund of a federal tax overpayment may arise as of midnight on December 31 in each tax year (assuming of course that the taxpayer's fiscal year ends at that same time), whether any overpayment will actually be refunded and remitted to the taxpayer is dependent on a number of factors, including—as the circuit court noted—whether the taxpayer opts to file a tax return in order to seek a refund, *see, e.g.*, U.S. Dep't of the Treasury, Internal Revenue Service, Instructions for Form 1040, "Do You Have To File?" at 7-8 & chart A (2016) (indicating threshold income amounts triggering requirement to file a federal tax return based on filing status, i.e., single, married filing jointly, married filing separately, head of household, and qualifying widow or widower with dependent child), as well as whether the overpayment amount, as calculated by the taxpayer, or any part thereof is diverted by the Department of the Treasury prior to being remitted to the taxpayer to satisfy certain other obligations that the taxpayer may owe pursuant to a statutorily-authorized setoff. Moreover, the circuit court's observation, made in its May 13, 2016 letter opinion, that "the calculation of the refund amount is nondiscretionary," cannot mean that the amount of tax overpayment as calculated by the taxpayer will automatically qualify for a refund and be remitted. That observation overlooks the possibility that an Internal Revenue Service review and/or audit of the taxpayer's return could result in a change to the amount of overpayment originally claimed by the taxpayer, resulting in a reduction, elimination or a finding that additional taxes are owed. This possibility further supports our conclusion that the debtors' 2015 income tax refunds amounted to an inchoate property interest that was not vested as of midnight on December 31, 2015.

"'The debt itself must be in existence at the time of the service of the writ, free from any contingency.'" *Id*. at 211, 40 S.E. at 649 (quoting 1 Freeman on Executions, sec. 165).

Application of the plain meaning of "in possession of," "entitled to" and "under the control" to the potential 2015 income tax refunds, for which 2015 income tax returns had not been filed, shows that, for purposes of Code § 8.01-507, Debtors were not entitled to nor did they have a fixed property interest in the 2015 income tax refunds at the time of the return date on the writ of fieri facias. Accordingly, we will reverse the judgment of the circuit court granting summary judgment and enforcing liens upon the potential 2015 income tax refunds of Debtors. We will remand for further proceedings consistent with this opinion.

## III. CONCLUSION

For the foregoing reasons, we hold that where an income tax return has not been filed by the return date on a writ of fieri facias, any potential income tax refunds for the applicable tax year are not "in possession of or under the control of the debtor" so as to be reachable by the lien under Code §§ 8.01-501 and -507.

*Reversed and remanded.*