**In re Dennis Dale DULANEY, Jr., a/k/a Dale Dulaney & Narlene Belcher Dulaney, Debtors.**

**Bankruptcy No. 7–82–00101.**

United States Bankruptcy Court,
W.D. Virginia,
Roanoke Division.

Dec. 21, 1982.

Tonita M. Foster, Roanoke, Va., for debtors.

J. Glenwood Strickler, Roanoke, Va., trustee.

Daniel D. Hamrick, Christiansburg, Va., for Corrine Chapman and Ramona Sisson.

Thomas R. King, Jr., Asst. U.S. Atty., Roanoke, Va., and Paige E. Reffe, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for I.R.S.

## MEMORANDUM OPINION

H. CLYDE PEARSON, Bankruptcy Judge.

The issue before the Court involves the proper priority of parties claiming funds held by the Trustee in bankruptcy for final distribution. Resolution of the issue turns on whether creditors Corrine Chapman (Chapman) and Ramona C. Sisson (Sisson) had obtained the status of judgment lien creditors within the meaning of 26 U.S.C. § 6323(a) [Internal Revenue Code of 1954] before the Internal Revenue Service (IRS) filed a notice of tax lien.

Dennis Dulaney and Narlene B. Dulaney (Debtors), now in bankruptcy, and Mr. Dulaney's wholly-owned corporation, Interstate Auto Sales, Inc. (Interstate Auto), filed suits in the Circuit Court of the City of Roanoke against Straub & Dalch, a Virginia accounting partnership, asking for damages in excess of $1,000,000.00 for breach of contract and negligence arising from accounting service rendered during the fiscal year ending November 1979. The cases progressed until October 27, 1981, at which time a compromise was reached whereby Interstate Auto and the Dulaneys would release and discharge the Defendants in exchange for $25,000.00. The sum was to be paid at that time to Interstate Auto. On October 30, 1981, IRS sent a Notice of Levy against Interstate Auto in the amount of $8,614.90 addressed to counsel for the corporation and counsel for Straub & Dalch. The Dulaneys then decided it would be advantageous to have the settlement proceeds paid to them or to IRS to satisfy a lien against the Dulaneys for unpaid tax assessments for the calendar years 1973, 1976, 1977, 1978 and 1979. A Notice of Federal Tax Lien was filed with respect to these unpaid liabilities on October 8, 1980, in the Clerk's Office of the Circuit Court of Montgomery County. Notice of the lien was delivered to Dulaneys' counsel on March 3, 1981, and to the attorney for Straub & Dalch on February 20, 1981. It appeared, therefore, in November of 1981 that the proceeds remaining after payment of counsel fees were destined to be delivered to the Dulaneys to satisfy their tax debts.

On September 18, 1980, Corrine Chapman and Ramona Sisson obtained judgments against the Dulaneys in Montgomery County Circuit Court. These judgments were docketed and executions issued on the same day. Writs of *fieri facias* were delivered to the Sheriff of Montgomery County on September 22, 1980, and were subsequently returned "no effects" on March 9, 1981. On November 27, 1981, Chapman and Sisson filed an Attachment Petition and a Memorandum of Notice of Writ of Fieri Facias was sent to counsel for the Dulaneys and counsel for Straub & Dalch. On December 2, 1981, writs of *fieri facias* were again issued on the judgments and delivered to the Sheriff for execution. These were returned "no effects" on April 22, 1982.

A petition in *interpleader* was filed by the Dulaneys in the Circuit Court of Roa-

noke City on January 6, 1982. On January 22, 1982, Dennis and Narlene Dulaney filed a Chapter 7 petition in bankruptcy in this Court. The $25,000.00 settlement proceeds were paid over to the Trustee in bankruptcy pending a determination of the proper order of distribution.

The United States bases a claim of right on a statutory tax lien under § 6321 of the Internal Revenue Code of 1954 (I.R.C. § 6321). Under I.R.C. § 6322, that lien arose when the assessment of taxes was made against the Dulaneys. I.R.C. § 6323(a), however, provides that such lien "shall not be valid as against any ... judgment lien creditor until notice thereof ... has been filed by the Secretary of his delegate." Chapman and Sisson contend they were judgment lien creditors within the meaning of § 6323(a) prior to the time notice of the tax lien was filed on October 8, 1980. Some twenty days earlier, Chapman and Sisson had executed upon their judgments by means of *fieri facias* writs. IRS claims its lien has priority because Chapman and Sisson were not judgment lien creditors within the meaning of § 6323(a); their liens were not choate and perfected under local law as against third parties.

■ When priority of a federal tax lien is asserted against a state-created lien, state law determines the existence and characteristics of the state lien, but federal law sets the standards for priority. It would be contrary to the federal policy of uniformity in the federal tax laws to permit the priority of federal tax liens to be determined by the diverse rules of the various states. *United States v. Equitable Life Assur. Soc.,* 348 U.S. 323, 86 S.Ct. 1561, 16 L.Ed.2d 593 (1966); *United States v. Pioneer Amer. Ins. Co.,* 374 U.S. 84, 83 S.Ct. 1651, 10 L.Ed.2d 770 (1963); *United States v. Acri,* 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264 (1955). With respect to 26 U.S.C. § 6323(a), it has been held that insofar as it may conflict with state law, state law must yield under the supremacy clause of the Federal Constitution, and while the state law may be given weight, the meaning of the statute and the terms used therein is a matter to be deter-

mined finally by the U.S. Supreme Court. Specifically, federal law determines whether the status of "judgment lien creditor" within the meaning of § 6323(a) of the Internal Revenue Code was attained before Notice of the Federal Tax Lien was filed. *United States v. Gilbert Associates, Inc.,* 345 U.S. 361, 73 S.Ct. 701, 97 L.Ed. 1071 (1953); *United States v. E. Regensburg & Sons,* 124 F.Supp. 687 (1954), aff'd. 221 F.2d 336 (2nd Cir.1955), cert. den. 350 U.S. 842, 76 S.Ct. 83, 100 L.Ed. 751.

Treasury Regs. § 301.6323(h)–1(g) provides the following definition of a judgment lien creditor:

> The term 'judgment lien creditor' means a person who has obtained a valid judgment, in a court of record and of competent jurisdiction, for the recovery of specifically designated property or for a certain sum of money. In the case of a judgment for the recovery of a certain sum of money, a judgment lien creditor is a person who has perfected a lien under the judgment on the property involved. A judgment is not perfected until the identity of the lienor, the property subject to the lien, and the amount of the lien are established ... *If under local law levy or seizure is necessary before a judgment lien becomes effective against third parties acquiring liens on personal property, then a judgment lien under such local law is not perfected until levy or seizure of the personal property involved.* (emphasis added)

This definition is in accordance with the Supreme Court's decision in *United States v. City of New Britain,* 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954). See also *United States v. Melchiorre,* 292 F.Supp. 305 (E.D. Va.1968).

To qualify as a judgment lien creditor protected by § 6323(a), not only must judgment have been recovered against the taxpayer, but a lien must have been obtained on the taxpayer's property against which priority is claimed. Such lien must be perfected under local law so as to be effective against third parties acquiring liens on the same property.

82

In Virginia, a creditor who has obtained a money judgment may enforce that judgment against his debtor's personal property by execution. Execution on intangible personality, including a chose in action owned by the debtor, is carried out by means of a writ of *fieri facias* which is issued and placed in the hands of the sheriff. An execution lien dates from the time the writ is delivered to the sheriff. *Va. Code* § 8.01–501 (1977 Repl.Vol.) Such lien on intangibles is perfected in that it has priority over all subsequent execution liens. *In re Acorn Elec. Supply, Inc.,* 348 F.Supp. 277 (E.D.Va.1972). This lien is not, however, effective as against a *bona fide* assignee or purchaser for value who is without notice of such lien. *Evans, Trustee v. Greenhow,* 56 Va. (15 Gratt.) 153 (1859); *Charron & Co. v. Boswell,* 59 Va. (18 Gratt.) 216 (1868); *Trevillian v. Guerrant,* 72 Va. (31 Gratt.) 525 (1879). The mere issuance of an execution is not sufficient to constitute notice to a *bona fide* purchaser for valuable consideration. *Virginia Machinery & Well Co. v. Hungerford Coal Co.,* 182 Va. 550, 29 S.E.2d 359 (1944).

Judgment creditors Chapman and Sisson had writs of *fieri facias* issued on September 18, 1980. These writs were delivered to the Sheriff for execution on September 22, 1980. As of the later date, Chapman and Sisson had valid execution liens on the intangible personal property possessed by the Dulaneys. These liens were perfected as against all subsequent lienholders, but were *not* effective as against third parties as contemplated by the *Treasury Regs.* and *U.S. v. City of New Britain, supra.* When IRS filed its Notice of Federal Tax Lien on October 8, 1980, the liens of Chapman and Sisson remained unperfected and inchoate as against third parties acquiring liens on personal property. Nothing beyond the mere issuance of writs of *fieri facias* had transpired. No actual notice of the writs or other form of execution had been issued. Such notice was not issued until November 21, 1981, long after IRS had filed notice of the tax lien.

For the foregoing reasons, this Court finds that the liens of Chapman and Sisson were not perfected within the meaning of I.R.C. § 6323(a) at the time IRS filed its notice of tax lien. Order will accordingly be so entered.