**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

In Re: ARC ENERGY CORPORATION,
a/k/a Colburn Energy Corporation,
<u>Debtor.</u>

WALLACE RESOURCES, LIMITED,                    No. 96-1529
<u>Plaintiff-Appellant,</u>

v.

UNITED STATES OF AMERICA,
<u>Defendant-Appellee.</u>

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, District Judge.
(CA-95-1591-A, BK-88-582-AB)

Argued: March 7, 1997

Decided: September 16, 1997

Before ERVIN, WILKINS, and NIEMEYER, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Robert Mason Goolrick, McLean, Virginia, for Appel-
lant. Alice Lizbeth Ronk, Tax Division, UNITED STATES
DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON**

**BRIEF:** Loretta C. Argrett, Assistant Attorney General, William S. Estabrook, Helen F. Fahey, United States Attorney, Tax Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

This appeal was filed by Wallace Resources, Ltd. (Wallace) subsequent to the district court's affirmance of a bankruptcy court decision holding that the Internal Revenue Service's (IRS or United States) tax liens on the claim of Colstar Petroleum (Colstar) against ARC Energy Corporation (ARC) were superior to Wallace's judgment against Colstar (which arose from a default judgment). Subsequent to ARC filing for bankruptcy, the company was required under a confirmed liquidation plan to pay $37,797 on the claim of Colstar to Colstar's creditors. Wallace and the IRS are competing claimants and creditors of Colstar and both seek to enforce their claims by receiving Colstar's $37,797 distribution from ARC. For the reasons hereinafter explored, we affirm the order of the district court.

I.

ARC filed for Chapter 11 bankruptcy on March 17, 1988, in the United States Bankruptcy Court for the Eastern District of Virginia. Colstar submitted proof of claim as a creditor of ARC. On November 13, 1991, Wallace filed a motion pursuant to Fed. R. Bankr. P. 3001(e)(2), seeking to be substituted for Colstar as the transferee of Colstar's bankruptcy claim against ARC. In support of its motion, Wallace asserted that it had obtained a default judgment in the amount of $120,000 against Colstar on May 23, 1990, in the Circuit Court of Fairfax County, Virginia, and on May 31, 1990, had dock-

2

eted the judgment. On February 19, 1992, the bankruptcy court ordered that Wallace be substituted as claimant of Colstar's claim.

On July 16, 1992, the IRS served ARC with a notice of levy with respect to taxes assessed against Colstar on December 3, 1990, requiring ARC to turn over all property and rights to property due and owing to Colstar. Along with the notice of levy, the IRS included a letter stating that the notice of levy was not an accelerated demand for payment insofar as ARC was in bankruptcy. On February 19, 1991, the IRS had filed notices of two federal tax liens with the Virginia State Corporation Commission. Notices of the liens were also filed with the Clerk of the Circuit Court in Fairfax County, one on February 21 and the other on February 25, 1991.

On January 17, 1995, the bankruptcy court entered a consent order allowing Colstar's claim against ARC in the amount of $41,797, but providing that only $4,000 of that amount be paid to Colstar and the remaining $37,797 (the funds) be set aside for Colstar's creditors. This $37,797 is the amount claimed by both Wallace and the IRS.

On January 30, 1995, the United States filed a motion in bankruptcy court for summary judgment claiming that its tax liens were entitled to priority over competing creditors' claims to Colstar's funds. In its supporting memorandum, the IRS stated that under the Internal Revenue Code, 26 U.S.C. § 6321, the federal tax liens arose on the date of assessment, December 3, 1990, upon all of Colstar's property and its rights to property. The IRS stated that those liens were superior to other creditors' claims of entitlement to those funds.

Wallace opposed the summary judgment motion on several grounds. First, Wallace argued that its claim to the funds had priority because its judgment had been entered and docketed in the lien records of Fairfax County in May, 1990, approximately seven months before the federal tax liens arose in December of that year, and roughly nine months before notices of those liens were filed in February, 1991. Second, Wallace argued that the tax liens could not extend to the funds because the filing of the notices of those liens during ARC's bankruptcy violated the automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362. Third, Wallace contended that it was not required to perfect its lien on the funds because "[b]ankruptcy law

3

does not permit state court execution." Wallace finally maintained that the transfer of Colstar's claim to Wallace, pursuant to Fed. R. Bankr. P. 3001(e)(2), stripped the federal tax liens from that claim.

The bankruptcy court subsequently delivered an oral opinion in which it concluded that the tax liens had priority over Wallace's claims. The court held that Wallace's judgment never attached to Colstar's bankruptcy claim because, under Virginia law,"a judgment that is rendered and docketed attaches only to real property." According to the court, in order to acquire a lien on intangible property, such as Colstar's claim in the instant case, a judgment creditor must obtain a writ of fieri facias and deliver it to the sheriff for execution.**1** Since Wallace presented no proof that it had obtained such a writ, the bankruptcy court concluded that Wallace was not a "judgment lien creditor" and thus was not entitled to priority over federal tax liens.

The bankruptcy court rejected Wallace's argument that the IRS had violated the automatic stay, noting that the stay provision only prohibits creditor process against a debtor such as ARC and the bankruptcy estate, not against a creditor such as Colstar who has a claim against ARC. See 11 U.S.C. § 362(a). Further, the bankruptcy court rejected Wallace's claim that the transfer of ARC's claim to it under Fed. R. Bankr. P. 3001(e)(2) divested the tax liens from that claim. The bankruptcy court noted that bankruptcy rules "cannot abridge or modify any substantive right of a party in interest." J.A. at 48 (citing 28 U.S.C. § 2075). Thus, Wallace acquired Colstar's claim subject to the tax liens.

Wallace appealed the order of the bankruptcy court to the district court. The district court subsequently affirmed the decision of the lower court and issued its final order on February 9, 1996. Wallace again appeals.

_____

**1** A writ of fieri facias is simply a "[j]udicial writ directing sheriff to satisfy a judgment from the debtor's property." Black's Law Dictionary 627 (6th ed. 1990).

4

II.

"Because the district court sits as an appellate court in bankruptcy, our review of the district court's decision is plenary. In other words, we apply the same standard of review as the district court applied to the bankruptcy court's decision." Southeast Hotel Properties Ltd. Partnership v. Atlanta Motor Speedway, 99 F.3d 151, 154 (4th Cir. 1996). The bankruptcy court's findings of fact are reviewed for clear error, while questions of law are reviewed de novo. Id.; In re Varat Enters., Inc., 81 F.3d 1310, 1314 (4th Cir. 1996).

III.

The Internal Revenue Code establishes that unpaid taxes become a lien in favor of the government on all property and rights to property of the delinquent taxpayer. See 26 U.S.C. § 6321. State law determines what constitutes property for purposes of attachment. See United States v. Nat'l Bank of Commerce, 472 U.S. 713, 722 (1985). Federal law, however, determines the priority of various creditors' claims on that property. See, United States v. Rodgers, 461 U.S. 677, 683 (1983).

The parties do not dispute Colstar's claim to those monies distributed to it under the terms of ARC's bankruptcy. The IRS, however, points out that Colstar's contingent right to payment from ARC is intangible personal property, property to which federal tax liens could attach. See Va. Code Ann. § 8.9-106 ("`General intangibles' means any personal property (including things in action) other than goods, accounts, chattel paper, documents, instruments and money."). The general rule of priority under federal law is that federal tax liens attach to a taxpayer's property and are entitled to absolute priority unless otherwise provided by statute. See 26 U.S.C. § 6323; United States v. City of New Britain, 347 U.S. 81, 85-86 (1954). Section 6323(a) provides exceptions to the tax lien priority rule:

> The lien imposed by section 6321 shall not be valid against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary.

5

26 U.S.C. § 6323(a) (emphasis added). Although the IRS did not file notices of its liens until nine months after Wallace docketed its judgment against Colstar, the bankruptcy court determined that Wallace was not entitled to priority "because, although Wallace was a judgment creditor, it had no lien on the property at issue, much less a valid lien arising prior to the creation or filing of federal tax liens."

Wallace was, according to the bankruptcy court, not a "judgment lien creditor" under the Code since it did not file and deliver to the sheriff a writ of fieri facias as required by Virginia law in order to perfect a lien on intangible personal property, in this case Colstar's claim against ARC.**2** See Va. Code Ann. §§ 8.01-478, 8.01-501; see also Johnston Memorial Hosp. v. Hess, 44 B.R. 598, 600 (Bankr. W.D. Va. 1984); Virginia Nat'l Bank v. Blofeld , 362 S.E.2d 692, 693 (Va. 1987).

A.

We have noted that federal law must govern "in matters relating to the treatment or priority a judgment lien is to be accorded when competing with a federal tax lien." Air Power, Inc. v. United States, 741 F.2d 53, 57 (4th Cir. 1984). Wallace concedes the holding of Air Power, but the company also cites several cases for the proposition that, under federal law, a judgment creditor may have priority without post-judgment execution. Each of these cases, however, fails to bolster this proposition and is distinguishable from the instant case because priority in each depended on the state law governing the initial question of when the property was subject to a lien. See, e.g., Hartford Provision Co. v. United States, 579 F.2d 7, 10 (2d Cir. 1978) (concluding that judgment holder had priority because, under Connecticut law, a judgment automatically makes attached property subject to a lien for 60 days even without execution); In re Fornabi, 227 F.Supp. 928, 930 (D.N.J. 1965) (giving judgments priority because, under New Jersey law, "a judgment docketed . . . is a lien"); In re Eabco, Inc., 108 B.R. 61, 63 (Bankr. W.D. Pa. 1989) (finding, under Pennsylvania law, that a confession judgment created a perfected

_____

**2** The IRS does not dispute Wallace's status as a judgment lien creditor with respect to Colstar's real property since Virginia law does not require a writ of fieri facias to perfect a lien on real property.

6

lien). The cases cited by Wallace fail to contradict the fact that, under Virginia law, Wallace did not obtain a perfected lien against Colstar's personal property because it did not file the requisite writ of fieri facias.**3**

B.

Wallace next argues that the automatic stay provision in the Bankruptcy Code, 11 U.S.C. § 362, prevented it from perfecting a lien on Colstar's bankruptcy claim. That provision provides:

>[A bankruptcy] petition . . . operates as a stay . . . of--
>
>[. . .]
>
>(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
>
>(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
>
>(4) any act to create, perfect, or enforce any lien against property of the estate;
>
>(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title . . . .

_____

**3** The government also points out that Wallace is not a judgment lien creditor for purposes of priority pursuant to Department of Treasury regulations. These regulations define a "judgment lien creditor" as follows:

>The term "judgment lien creditor" means a person who has obtained a valid judgment . . . for the recovery of specifically designated property or for a certain sum of money. In the case of a judgment for the recovery of a certain sum of money, a judgment lien creditor is a person who has perfected a lien under the judgment on the property involved."

26 C.F.R. § 301.6323(h)-1(g) (emphasis added).

7

11 U.S.C. § 362(a) (emphases added). Accordingly, the bankruptcy court explained why the stay did not prevent Wallace from perfecting a judgment lien against the property of Colstar:"[T]he automatic stay prohibits the creditor process against the debtor and the bankruptcy estate. It does not prohibit collection of actions against a creditor who in turn has a claim against the bankrupt debtor . . . ." J.A. at 50-51 (citing Willford v. Armstrong World Indus., Inc. , 715 F.2d 124, 126-127 (4th Cir. 1983) (holding that §362(a) "provides only for an automatic stay of any judicial proceeding `against the debtor' . . . [and] [t]hat insulation . . . belongs exclusively to the `debtor' in bankruptcy" (emphasis added)).**4**

Wallace cites In re Tour Train Partnership, 15 B.R. 401, 402-03 (Bankr. D. Vt. 1981), to support its position that"[t]he Section 362 stay precludes judgment execution against the interest of a creditor in the property of the bankruptcy estate." Brief for Appellant at 10. In Tour Train, the plaintiff held a judgment against a creditor of the bankruptcy debtor. The plaintiff sought relief from the automatic stay on actions against the debtor and requested permission to proceed against the debtor and the creditor. The bankruptcy court held that the plaintiff, "[a]s a stranger to the bankruptcy proceeding[,] [did] not qualify as a party in interest which may request the lifting of the automatic stay under § 362 of the Bankruptcy Code." Id. at 402. The holding of Tour Train, however, does not squarely apply in the instant case since Wallace would not need to lift the stay on actions against ARC, or allow execution against ARC, in order to perfect a lien.

C.

Wallace further contends that, in order to receive a lien against the intangible property claimed by Colstar, Virginia law required Wallace to file a writ of fieri facias and obtain a garnishment summons. Temporarily abandoning its contention that it was not required to file a writ of fieri facias, Wallace argues that, even if it had filed the writ, it would not have been entitled to priority unless it also garnished the

_____

**4** In fact, the filing of a writ of fieri facias in Virginia creates a lien on the personalty of the judgment debtor only, Colstar in the instant case. See Va. Code Ann. §§ 8.01-478, 8.01-501; International Fidelity Ins. Co. v. Ashland Lumber Co., 463 S.E.2d 664, 667 (Va. 1995).

8

funds--an act it was precluded from doing under the automatic stay. Thus, according to Wallace, the bankruptcy court's decision placed the company in a no-win situation. In fact, a lien of fieri facias does not require garnishment for perfection.**5** See In the matter of Acorn Elec. Supply, Inc., 348 F.Supp. 277, 280 (E.D. Va. 1972) ("The remedy afforded by garnishment was designed simply to enforce [a] lien of execution. `The lien itself is as complete and perfect without (it) and with (it).'") (applying Virginia law) (quoting Trevillian's Ex'ors v. Guerrant's Ex'ors, 31 Gratt. (72 Va.) 525 (1879)).

Wallace's apparent belief in the necessity of garnishment for lien perfection is also incorrect simply because, as discussed supra, garnishment cannot proceed where there is not first a lien. See Va. Code Ann. §§ 8.01-511; 8.01-512.3. We conclude that Wallace has no lien given that it failed to file the necessary writ of fieri facias.

D.

Finally, Wallace argues that the bankruptcy court's decision to transfer Colstar's claim to Wallace under Fed. R. Bankr. P. 3001(e)(2) operated to strip the federal tax liens from that claim.**6** The bankruptcy court, however, noted the purpose and limitations of the rule:

> Rule 3001(e) is designed to ensure that sufficient notice is given when a claim against the debtor is transferred or assigned post-petition. [See In Re: Wilson , 96 B.R. 257, 261 (B.A.P. 9th Cir. 1988)]. This bankruptcy rule cannot abridge or modify any substantive right of a party in interest. See 28 U.S.C. § 2075.

_____

**5** Wallace cites In re Dulaney , 29 B.R. 79 (Bankr. W.D. Va. 1982) to support its position that garnishment is required to impose a lien on personalty in Virginia. That case held that garnishment was required to accompany the filing of a writ of fieri facias in order to constitute notice to a bona fide purchaser. The Dulaney court found, however, that the judgment liens perfected by writs were "perfected as against all subsequent lienholders." Id. at 82.

**6** Fed. R. Bankr. P. 3001(e)(2) provides that, "[i]f the court finds . . . that the claim has been unconditionally transferred, it shall enter an order substituting the transferee for the original claimant . . . ."

J.A. at 48 (emphasis added). The bankruptcy rules, 28 U.S.C. § 2075, state that "[s]uch rules shall not abridge, enlarge, or modify any substantive right." Thus, the federal tax liens which attached to Colstar's claim were not divested upon the claims' transfer:"The transfer of property subsequent to the attachment of the lien does not affect the lien, for `it is of the very nature and essence of a lien, that no matter into whose hands the property goes, it passes <u>cum onere</u> . . . .'" <u>United States v. Bess</u>, 357 U.S. 51, 57 (1958) (citations omitted).

The cases cited by Wallace do not contradict the bankruptcy court's evaluation of Rule 3001(e)(2). In <u>In re Ocean Downs Racing Ass'n, Inc.</u>, 164 B.R. 249, 255-56 (Bankr. D. Md. 1993), the court determined that the judgment creditors of the debtor's sole stockholder should have followed Rule 3001(e)(2) when they attempted to substitute their claims for that of the stockholder against the debtor's estate. Further, in <u>In re Wilson</u>, 96 B.R. 257, 261 (B.A.P. 9th Cir. 1988), the bankruptcy court simply held that the claimant had failed in her obligation under Rule 3001(e)(2) requiring a transferee to file evidence of the terms of a transfer of claim (notice of transfer of claim). Thus, Wallace cites no authority implying that Rule 3001(e)(2) is anything other than a rule requiring a transferee of a claim to give notice of the transfer. Given the rule's purpose, and the fact that it "shall not abridge, enlarge, or modify any substantive right," the rule provides no basis for granting Wallace's judgment priority over the IRS's federal tax liens. <u>See</u> 28 U.S.C. § 2075.

IV.

Wallace has not refuted the bankruptcy court's application of Virginia law, requiring a judgment creditor to file a writ of <u>fieri facias</u> in order to acquire a lien on intangible personal property. Wallace did not obtain and execute such a writ and, therefore, had no lien on Colstar's bankruptcy claim. Thus, Wallace's judgment against Colstar is not entitled to priority over the IRS's federal tax liens. Accordingly, we affirm the order of the district court.

<u>AFFIRMED</u>

10