# Wytheville.

H. L. THOMPSON v. COMMONWEALTH AND J. L. KENLEY.

June 23, 1931.

Present, Prentis, C. J., and Campbell, Holt, Hudgins and Gregory, JJ.

The opinion states the case.

*Burns & Griffith,* for the plaintiff in error.

No appearance for the Commonwealth or the defendant in error.

PRENTIS, C. J., delivered the opinion of the court.

Kenley had a judgment against Thompson, for which he had pledged ninety shares of the stock of the Lebanon Milling Company, Inc., which stock belonged to Thompson, the debtor. An execution of *fieri facias* had been issued on the judgment, but no effort had been made to sell the ninety shares of stock so held as collateral security for the debt.

Proceeding under Code, section 6503, Thompson was summoned to appear before one of the commissioners of the Circuit Court of Russell county, to answer such interrogatories as might be legally propounded to him, in order to ascertain the estate of Thompson upon which the execution or judgment was a lien.

Thompson appeared and was subjected to a prolonged examination as to his own property. He was examined with great detail even as to property which was not subject to the lien and which he had a right to retain under the poor debtors' law, Code, section 6552. He seems to have answered all such

questions frankly. Upon the advice of counsel, however, he refused to answer certain other questions. The commissioner deemed his refusal to answer these questions as evasive, and committed him to jail, under section 6506, to remain there until he should make proper answers. Whereupon, Thompson appeared specially, and moved the court to quash the writ issued by the commissioner and to discharge him from custody, and the case was submitted upon the demurrer and the written report of the commissioner. The court held that Thompson was not unlawfully detained in custody, and denied his motion to be discharged, from which judgment this writ of error has been allowed.

Code, section 6503, subjects any judgment debtor to examination before a commissioner in chancery for the purpose of ascertaining any estate of the debtor upon which the *fieri facias* is a lien, as well as to ascertain any real estate in or out of the State to which such debtor is entitled.

There is another statute, Code, section 6236, which authorizes definite written interrogatories to be propounded to an adverse party or claimant in any action or motion at law, which may be used as a substitute for a bill of discovery, but that section cannot be applied to this case, which is entirely controlled by Code, sections 6503-6506, inclusive, which can only be invoked against a debtor under an execution of *fieri facias* against him.

The questions which Thompson refused to answer do not relate to any of his own estate directly subject to the lien of the judgment and execution. As to his own property, he appears to have answered unequivocally, freely and without evasion. The questions which he refused to answer relate principally to the affairs of the Lebanon Milling Company, Inc. He disclosed the stock owned by him in that company; that is, the ninety shares which the judgment creditor already held as collateral to secure the debt, and he referred to fifty additional shares which had been at one time owned by him, but which,

he stated, has subsequently been sold and transferred to C. J. Thompson, and which at a later date had been sold by C. J. Thompson to H. E. Thompson, all of which had occurred prior to the judgment and prior to the issuance of execution thereon.

 The questions indicate an effort to require the production of all of the books of the Lebanon Milling Company, Inc., but not for the purpose of ascertaining those persons who owned the stock, for these had been freely disclosed. The stock books had been exhibited, but as to one of the questions the purpose was stated to be in order to ascertain who owned "the controlling interest" in that corporation, so as (according to the avowal) to ascertain the value of the ninety shares of stock already held by this creditor as collateral security for his judgment. Such a purpose as this was entirely beyond the jurisdiction of the commissioner, under section 6503. The controlling interest was disclosed by the names of the stockholders and the number of shares owned by each; while any expression by Thompson as to the value of the stock could, at most, have been only an opinion. Certainly it is conceded that the execution was not a lien on the property of the Lebanon Milling Company, Inc., but the effort seemed to be to secure evidence which might be used in some other proceeding. Code, section 6503, was not intended primarily for any such purpose, and is not a substitute for a bill of discovery.

 Among the questions asked, was whether or not he had refused to show all the books of the corporation. His answer was: "I did refuse to show him anything except the stock books. My reason is because I don't feel I have the authority to, and because I don't consider Mr. Kenley a stockholder at the present time." Then he was asked whether or not any stock had been issued to him or his wife, or jointly, by the corporation since the ninety shares of stock were pledged to Kenley as security for a debt, on account of dividends earned by that pledged stock, and Thompson refused to answer that question.

In ruling upon this, the commissioner expressed the opinion that "while only such property is liable to the lien of the execution creditor as was owned by the execution debtor after the issuance of the execution, yet the commissioner is of opinion that in order to determine what property was owned by the execution debtor upon which the execution is a lien, the creditor has a right to extend his inquiry beyond the specified time covered by the execution."

There may be instances in which questions going so far as this might be proper, but this particular question is not shown to be pertinent in this case. It seems to have been a hunt for testimony to be used in some other proceeding for the purpose of recovering the fifty shares of stock, not from the execution debtor, but from the person whose name was disclosed, but who is not a party to this proceeding.

This question was also propounded: "How many shares were issued as a stock dividend since you became associated with the company?"

The relation of this question to the property then owned by the execution debtor does not appear. So far as the record shows, the declaration and distribution of stock dividends of the corporation since Thompson had become associated with the company was entirely irrelevant to that particular inquiry.

There are several other questions relating to the affairs of the corporation which Thompson refused to answer, but he did not refuse to answer any as to his own property. It seems to us quite clear, then, that the commissioner erred in committing Thompson to jail for refusing to answer such questions, and it follows, of course, that we think the court erred in refusing to discharge him from custody. It may be true that the judgment debtor has some interest in the corporation which may, under proper procedure, by bill in equity, be ultimately subjected to the payment of the judgment against Thompson, but this cannot be done under Code, section 6503, *et seq*. That section can neither be used as a substitute for a

bill of discovery, nor for interrogatories under Code, section 6236, nor for a bill in equity to set aside fraudulent transfers of property by a debtor. It is by its terms limited to questions the object of which is to disclose the property of the debtor which can be made subject to the execution or judgment by appropriate orders in that proceeding, to which the debtor and creditor are the sole parties, whose rights are directly involved.

Our conclusion, then, is that the court erred in refusing to discharge H. L. Thompson from custody. An order discharging him from custody will be entered here.

*Reversed.*