COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Judges Huff, Raphael and Lorish
Argued at Arlington, Virginia


DAKSHAY PATEL, VIRGINIA STAR, LLC,
  SUN MANAGEMENT GROUP, INC., F/K/A
  SANDESARA MANAGEMENT GROUP, INC.,
  AMERICAN ENTERPRISES, LLC D/B/A
  STERLING GELATIN, INC., SAIB, LLC,  AND
  STERLING OIL RESOURCES LLC

                                                              OPINION BY
  v.        Record No. 0034-22-4                    JUDGE STUART A. RAPHAEL
                                                              NOVEMBER 1, 2022

RECEIVER JONATHAN I. RABINOWITZ
  ex rel. LAKHANI ASSOCIATES, LLC AND
  PRIMIS BANK, F/K/A SONABANK


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Penney S. Azcarate, Judge

Ryan J. Strasser (Timothy L. McHugh; Abbey M. Thornhill;
Troutman Pepper Hamilton Sanders LLP, on briefs), for appellants.

Sara E. Kropf (Kropf Moseley PLLC, on brief), for appellee
Receiver Jonathan I. Rabinowitz ex rel. Lakhani Associates, LLC.

No brief or argument for appellee Primis Bank, f/k/a Sonabank.


We consider here whether a judgment creditor may use the Uniform Interstate

Depositions and Discovery Act (UIDDA), Code §§ 8.01-412.8 to 8.01-412.15, to serve an

out-of-state document subpoena on third parties in Virginia when the judgment creditor only

suspects that those third parties might hold property or assets belonging to the judgment debtor.

We conclude that Virginia law does not allow such a post-judgment discovery subpoena, and we

reach that conclusion in two steps.

First, UIDDA makes clear that the law of the discovery State—here, Virginia—

determines the scope and enforceability of the out-of-state subpoena when served on a person or

entity in Virginia. Thus, even if the post-judgment subpoena for documents were permitted in the State where the judgment was rendered, Virginia law determines whether the subpoena is valid as applied to the third party in Virginia.

And second, Virginia law permits a judgment creditor to serve a subpoena duces tecum on third parties under Code § 8.01-506.1 only in aid of debtor's interrogatories, which are permitted only if the judgment creditor can show that the third party holds property of the judgment debtor or owes money to the judgment debtor. We held in *Aufforth v. Aufforth*, 72 Va. App. 617 (2020), that debtor's interrogatories under Code § 8.01-506 may not be used against a third party unless the third party is shown to be "a debtor to or a bailee of the debtor." *Id.* at 626. A mere suspicion that the third-party may be holding property of the debtor is not enough. *Id.* at 627-28. We conclude that the same limitation applies to a subpoena duces tecum issued to a third party under Code § 8.01-506.1. For one thing, the plain language of that statute says that a subpoena duces tecum to a non-party must be for a "proceeding under the provisions of § 8.01-506." Code § 8.01-506.1. For another, Virginia remains in the small minority of jurisdictions that has not generally authorized pretrial discovery procedures to be used in post-judgment efforts in aid of execution.

Because the judgment creditor here concedes that it cannot show that the third parties hold any property or assets of the judgment debtor, the trial court erred in failing to quash the subpoena duces tecum.

BACKGROUND

In August 2011, a state court in New Jersey entered judgment against Anil Patel and Manish Patel ("judgment debtors") for $8.7 million (plus pre- and post-judgment interest) and in

favor of Lakhani Associates, LLC.[1]  In November 2016, the New Jersey court appointed

Jonathan I. Rabinowitz as a receiver to collect the judgment.  According to the receiver, the

current judgment amount is about $15 million.  The receiver's investigation produced

information suggesting that the judgment debtors may have engaged in a scheme to defraud the

judgment creditors.  The receiver asserted that the judgment debtors had "transferred substantial

funds and assets to family members and friends as part of their fraudulent scheme to conceal

their assets and evade judgment collection."

Appellant Dakshay Patel (who goes by Danny Patel) is a resident of Virginia.  He

operates various business enterprises in the Commonwealth.  Though he shares the same last

name, he is unrelated to the judgment debtors.  During the New Jersey litigation, the judgment

creditors discovered that Danny Patel was paying the judgment debtors' attorney fees.  The

judgment creditors and the receiver developed the suspicion that Danny Patel was serving as a

conduit to use the judgment debtors' hidden assets to pay their legal fees.

For his part, Danny Patel submitted an affidavit below stating that he is a successful

businessperson with a net worth of $15-20 million.  Soon after he moved to the United States in

1978, Danny Patel befriended Manish Patel and his family.  Danny Patel asserted that he agreed

to guaranty the judgment debtors' attorney fees in the New Jersey action out of compassion and

friendship.  He denied receiving any funds "directly or indirectly" from either of the judgment

debtors, and he denied helping the judgment debtors hide or launder their money.

Unconvinced, the receiver sought to issue a subpoena duces tecum to Sonabank, located

in Virginia, for banking records since January 1, 2016, for the accounts of Danny Patel and

various entities in which he has a business interest—appellants Virginia Star, LLC; Sun

---

[1] The judgment itself does not appear in this record.

Management Group, Inc., f/k/a Sandesara Management Group, Inc.; American Enterprises, LLC d/b/a Sterling Gelatin, Inc.; SAIB, LLC; and Sterling Oil Resources LLC (collectively, the "third parties"). To that end, the receiver obtained a document subpoena from the Superior Court of New Jersey and sought to domesticate it in Virginia under UIDDA. In accordance with Code § 8.01-412.10, the receiver filed the subpoena in the Fairfax County Circuit Court, along with the filing fee and a certification under Code § 8.01-412.10(A)(ii) that New Jersey has adopted UIDDA and allows for reciprocal discovery privileges in New Jersey. The Fairfax County Circuit Court clerk issued the subpoena to Sonabank on February 13, 2020, returnable March 11.

Five days before the return date, appellants Danny Patel and the other third parties moved to intervene in the Fairfax County action and to quash the subpoena. The third parties argued that the subpoena was "a harassing fishing expedition." Further proceedings were suspended, however, on account of the COVID-19 pandemic.

Twenty months later, the circuit court granted the third parties' motion to intervene but denied their motion to quash or modify the subpoena. The court did not accept the third parties' contention that Virginia law constrains judgment-creditor discovery of third parties. Noting that the New Jersey court deemed similar discovery to be relevant, the circuit court found that the discovery sought here was "not a fishing expedition, and it may lead to admissible evidence." The court also declined to limit the scope of the subpoena, reasoning that "it is a foreign subpoena, and I just don't find that Virginia has jurisdiction to do that." The court denied the third parties' motion to reconsider and their motion to stay pending appeal.

Although the trial court ordered that Sonabank "comply immediately" with the subpoena, we stayed that order pending resolution of this appeal on the merits. We now reverse.

- 4 -

ANALYSIS

Appellate courts generally review a trial court's ruling on the "grant or denial of discovery requests under an abuse of discretion standard." *Temple v. Mary Washington Hosp., Inc.*, 288 Va. 134, 139 (2014). The same abuse-of-discretion standard applies to an order refusing to quash a discovery subpoena. *Am. Online, Inc. v. Nam Tai Elecs., Inc*., 264 Va. 583, 590 (2002). "Although we review a ruling on discovery for abuse of discretion, a lower court's interpretation of a statute or the rules of the Supreme Court of Virginia presents a question subject to *de novo* review on appeal." *Nimety v. Commonwealth*, 66 Va. App. 432, 437 (2016).

### A. *Virginia law applies under UIDDA to the validity and enforceability of an out-of-state subpoena served in Virginia.*

It has taken about a century for the States to reach consensus on the procedure for domesticating an out-of-state subpoena. In 1920, the National Conference of Commissioners on Uniform State Laws (also known as the Uniform Law Commission), adopted the Uniform Foreign Depositions Act (UFDA). *See* National Conference of Commissioners on Uniform State Laws, *Uniform Interstate Depositions and Discovery Act* 1 (2007), https://tinyurl.com/25kxf2up (hereafter "Uniform Law Commission"). UFDA provided that when "any mandate, writ or commission" issued from a court of record in a foreign jurisdiction, or when the testimony of a witness was required for a case in a foreign jurisdiction, the witness could "be compelled to appear and testify in the same manner and by the same process as employed for taking testimony in matters pending in the courts of this state." *Id.* At least twelve States adopted UFDA. *Id.* Virginia adopted it in 1958. *See* 1958 Va. Acts ch. 58.

In 1962, the Uniform Law Commission proposed a new uniform law to supersede UFDA, the Uniform Interstate and International Procedure Act (UIIPA). *See* Uniform Law Commission, *supra*, at 1. UIIPA contained more detail and addressed more issues than UFDA. *Id.* But it was

not enthusiastically received.  Only six jurisdictions adopted it; Virginia did not.  *Id.*  In 1977, the National Law Conference withdrew its recommendation to adopt UIIPA because the model law had become "obsolete."  *Id.* at 2.

By 1981, every state had "either a statute or rule providing for the taking of depositions of persons within the jurisdiction for use in an out-of-state proceeding."  Timothy L. Mullin Jr., *Interstate Deposition Statutes: Survey and Analysis*, 11 U. Balt. L. Rev. 1, 3 (1981).  But the rules differed considerably, with "thirty-three variations . . . among the fifty-one jurisdictions." *Id.* at 3-4.  As one commentator lamented, "Unless one statute can be fashioned and adopted by a great majority of states, the practitioner will remain saddled with the unwieldy variety of interstate deposition statutes whenever litigation leads out of the home state."  *Id.* at 52.

To address that problem, the Uniform Law Commission proposed UIDDA in 2007.  *See* Uniform Law Commission, *supra*, at i.  The procedure for domesticating an out-of-state subpoena was "patterned after Rule 45 of the [Federal Rules of Civil Procedure]," a rule that UIDDA's drafters said "appears to be universally admired by civil litigators for its simplicity and efficiency."  *Id.* at 4.  The model law "establishes a simple clerical procedure under which a trial state subpoena can be used to issue a discovery state subpoena."  *Id.*  The process requires "minimal judicial oversight: it eliminates the need for obtaining a commission, letters rogatory, filing a miscellaneous action, or other preliminary steps before obtaining a subpoena in the discovery state."  *Id.*

The General Assembly adopted UIDDA in 2009.  *See* 2009 Va. Acts ch. 701 (codified as amended at Code §§ 8.01-412.8 to 8.01-412.15).[2]  To date, forty-four other States and the

---

[2] The legislation was recommended by the Boyd-Graves Conference.  *See* Memorandum from the Committee to Study Uniform Interstate Depositions and Discovery Act to the Boyd-Graves Conference (2008), https://www.vba.org/general/custom.asp?page=boyd_graves.

District of Columbia have also adopted UIDDA.  *See* Uniform Law Commission, *Enactment Map, Interstate Depositions and Discovery Act*, https://tinyurl.com/2ny4byw2.

The "enforcement of a subpoena seeking out-of-state discovery is generally governed by the courts and the law of the state in which the witness resides or where the documents are located."  *Yelp, Inc. v. Hadeed Carpet Cleaning, Inc.*, 289 Va. 426, 435 (2015).  UIDDA maintains that principle.[3]  Thus, Code § 8.01-412.12 makes Virginia law applicable to issues surrounding subpoena compliance.[4]  And Code § 8.01-412.13 provides that Virginia law governs motions "to enforce, quash, or modify" the subpoena.[5]  In that fashion, "UIDDA affords protection to Virginia citizens subject to a subpoena from another state by providing for enforcement of the subpoena in Virginia."  *Yelp*, 289 Va. at 437; *see also, e.g.*, *Quinn v. Eighth Jud. Dist. Ct.*, 410 P.3d 984, 988 n.6 (Nev. 2018) ("Other states have likewise interpreted their own uniform acts as evidencing a legislative intent 'that enforcement of civil subpoenas against out-of-state nonparties is left to the state in which the discovery is to take place.'" (quoting *Colo. Mills, LLC v. SunOpta Grains & Foods, Inc.*, 269 P.3d 731, 735 (Colo. 2012) (en banc))).

---

[3] *E.g.*, Uniform Law Commission, *supra*, at 4 (stating that UIDDA "is fair to deponents: it provides that motions brought to enforce, quash, or modify a subpoena, or for protective orders, shall be brought in the discovery state and will be governed by the discovery state's laws").

[4] *See* Code § 8.01-412.12 ("Statutes and rules applicable in actions pending in the circuit courts of the Commonwealth with respect to compliance with subpoenas to attend and give testimony, produce designated books, documents, records, electronically stored information, or tangible things, or permit inspection of premises, shall apply to subpoenas issued under § 8.01-412.10.").

[5] *See* Code § 8.01-412.13 ("An application to the court for a protective order or to enforce, quash, or modify a subpoena issued by a clerk of court under § 8.01-412.10 shall comply with the statutes and rules of court of the Commonwealth and be submitted to the court in the circuit in which discovery is to be conducted.  A separate civil action need not be filed.").

"[T]he discovery state has a signficant interest in protecting its residents who become non-party witnesses in an action pending in a foreign jurisdiction from any unreasonable or unduly burdensome discovery requests . . . ." Uniform Law Commission, *supra*, at 9. For residents of the discovery state to enjoy that protection, "the discovery procedure must be the same as it would be if the case had originally been filed in the discovery state." *Id.* at 8. UIDDA's recognition of the discovery state's need to protect its residents aligns with existing Virginia precedent under UFDA that an out-of-state subpoena may not be enforced in Virginia if it "would prejudice [Virginia's] own rights or the rights of its citizens." *Am. Online*, 264 Va. at 591 (alteration in original) (quoting *McFarland v. McFarland*, 179 Va. 418, 430 (1942)).

        B. *Virginia law does not permit a judgment creditor to issue a subpoena duces tecum to a non-party based only on a suspicion that the non-party holds assets or property of the judgment debtor.*

Since UIDDA makes clear that the enforceability of the out-of-state subpoena here turns on Virginia law, we next address whether Virginia law permits the subpoena served by the receiver. Virginia's discovery rules in Part Four of the Rules of the Supreme Court of Virginia—permitting, among other things, interrogatories, document requests, non-party subpoenas, depositions, and requests for admission, *see* Rules 4:5 to 4:11—rarely permit discovery in a case *after* the trial court has entered a final judgment. Indeed, none of the provisions in Part Four mentions discovery in aid of execution of a money judgment.

The Part Four rules are designed instead to elicit the discovery of admissible evidence "at the trial." Rule 4:1(b)(1). Such discovery is almost always completed before the trial begins. Under the Uniform Pretrial Scheduling Order, *de bene esse* depositions must be completed fifteen days before trial, and other discovery must be completed thirty days before trial. *See* Rules of the Supreme Court of Virginia, Part One, App. Form 3. The only provision in Part Four that contemplates discovery *after* final judgment is Rule 4:2(b). When a case is on appeal from a

- 8 -

final judgment, that rule permits a party with leave of court to take "the depositions of witnesses to perpetuate their testimony for use in the event of further proceedings in [the trial] court."  Rule 4:2(b).  And even then, a post-judgment deposition is not allowed unless the trial court "finds that the perpetuation of the testimony is proper to avoid a failure or delay of justice."  *Id.*

Virginia law, however, permits a more limited form of discovery in aid of execution of a money judgment.  Code § 8.01-506 empowers a judgment creditor to conduct debtor's interrogatories.  Debtor's interrogatories enable the judgment creditor "[t]o ascertain the personal estate of a judgment debtor, and to ascertain any real estate, in or out of this Commonwealth, to which the debtor named in a judgment and fieri facias is entitled."  Code § 8.01-506(A).  The summons for debtor's interrogatories requires the judgment debtor to appear before the court or designated commissioner in chancery "to answer such interrogatories as may be propounded to him by the execution creditor or his attorney, or the court, or the commissioner, as the case may be."  Code § 8.01-506(B).[6]

The use of this procedure is restricted.  In 1968, the General Assembly amended it to prohibit the judgment creditor from conducting debtor's interrogatories more than once every six months, unless the judgment creditor obtains leave of court "for good cause shown" to conduct more frequent examinations.  1968 Va. Acts ch. 599 (codified as amended at Code § 8.01-506(C)).

The current version of the statute does not limit debtor's interrogatories to just the judgment debtor.  The judgment creditor may also summon "any debtor to, or bailee of, the

---

[6] Because the procedure is functionally a deposition or an examination before a judicial officer, the term *interrogatories*—suggesting answers to written questions—is something of misnomer.  Modern procedure, however, evolved from earlier statutes that, from 1849 to 1897, called for *written* answers under oath.  *Compare* Code tit. 53, ch. 188, § 5 (1849) (requiring debtor to "file" written answers), *and* Code tit. 50, ch. 176, § 3603 (1887) (same), *with* 1897-1898 Va. Acts ch. 470 (requiring debtor's personal appearance to "answer" interrogatories).

execution debtor." Code § 8.01-506(A). That power was first added in 1898. *See* 1897-1898 Va. Acts ch. 470 ("any debtor or bailee").

We held in *Aufforth*, that the plain meaning of "any debtor to, or bailee of, the execution debtor" required—as a condition of conducting debtor's interrogatories—that the judgment creditor establish that the third party was, in fact, a debtor or bailee of the execution debtor. 72 Va. App. 625-26. The judgment creditor in *Aufforth* suspected that the debtor's ex-wife "was a debtor to or a bailee of debtor husband" because the debtor husband lived in a residence that was owned by the ex-wife. *Id.* at 624. But we said that the statute's plain language precluded debtor's interrogatories for third parties that the judgment creditor only "suspected" to be a debtor or bailee of the judgment debtor. *Id.* at 625.

Our conclusion was supported by the Supreme Court's determination in 1931 that the debtor's interrogatories procedure is "not a substitute for a bill of discovery." *Id.* at 628 (quoting *Thompson v. Commonwealth*, 156 Va. 1032, 1036 (1931)). Before his elevation to the Supreme Court of Virginia, then-Judge Compton reached a similar conclusion in 1969, explaining that debtor's interrogatories could not be used against an alleged bailee who—like appellants here— denied holding assets of the judgment debtor and denied owing the judgment debtor any money. *See Laundry & Dry Cleaner Suppliers v. Com. Wholesale Laundry Co.*, 1 Va. Cir. 86, 90 (Richmond 1969) ("If there is a dispute over the indebtedness or alleged obligation of the witness to the judgment debtor, the witness should not be required to try this issue in a proceeding supplemental to an action wherein he is not a party nor should he be subjected to an examination of his affairs as they relate to such alleged debt.").

In this case, of course, the receiver does not seek to conduct debtor's interrogatories of the subpoenaed party, Sonabank, nor of the appellants. The receiver seeks instead to serve a subpoena duces tecum on Sonabank for the bank records of the appellants. The receiver argues

that the subpoena is authorized under Code § 8.01-506.1 and that *Aufforth* does not limit such subpoenas to instances in which the target of the subpoena is a known bailee or debtor of the judgment debtor.[7]

We conclude, however, that the requirement in Code § 8.01-506 that the third party be a *known* bailee or debtor also applies to a subpoena duces tecum to a third party under Code § 8.01-506.1. Start with the "plain language" of the statute. *Aufforth*, 72 Va. App. at 625. Code § 8.01-506.1 makes clear that the subpoena duces tecum must be issued in a "proceeding *under the provisions of* § 8.01-506." (Emphasis added). Because that text is "unambiguous, we are bound by the plain meaning." *Aufforth*, 72 Va. App. at 625 (quoting *Shifflett v. Latitude Props., Inc.*, 294 Va. 476, 483 (2017)). And *Aufforth* makes clear that debtor's interrogatories may not be used against a non-party that is only suspected to be a possible bailee or debtor of the judgment debtor. *Id.* at 625-26.

Without Code § 8.01-506.1, there is no other statute or rule of court authorizing a judgment creditor in aid of execution to issue a subpoena duces tecum. As noted above,

---

[7] Code § 8.01-506.1 provides:

> In any proceeding under the provisions of § 8.01-506, a subpoena duces tecum may be issued for a book of accounts or other writing containing material evidence pursuant to Rule 4:9A of the Rules of the Supreme Court. However, notwithstanding the provisions of Rule 4:9A, a subpoena duces tecum issued pursuant to this section may (i) be directed to a party to the case and (ii) be issued by a commissioner and may direct that evidence and any custodians subpoenaed be produced before the commissioner. If the subpoena duces tecum is against a party who is not a resident of the Commonwealth, but who has appeared in the case or been served with process in this Commonwealth, the service may be on his attorney of record.
> The provisions of Rule 4:1(c) of the Supreme Court as to protective orders shall be applicable to proceedings under this section.

discovery under Part Four of the Rules seeks information before trial that is reasonably calculated to lead to the discovery of admissible evidence "at the trial." Rule 4:1(b)(1). The scope of a third-party document subpoena under Rule 4:9A carries that same limitation. *See* Rule 4:9A(b) (authorizing subpoenas duces tecum relating to "matters within the scope of Rule 4:1(b)"). Code § 8.01-506.1 creates an exception to that limitation, authorizing a judgment creditor in connection with debtor's interrogatories to request a post-judgment subpoena duces tecum "pursuant to Rule 4:9A." Absent that enabling authority, however, no other provision of the Code and no rule of court authorizes the post-judgment subpoena here.

Moreover, disassociating Code § 8.01-506.1 from Code § 8.01-506 would deprive the judgment debtor of the protection of § 8.01-506(C), which limits the burden to undergo debtor's interrogatories to once every six months (absent good cause). Subpoenas to the debtor himself may be issued under Code § 8.01-506.1, even though pretrial discovery subpoenas under Rule 4:9A are normally restricted to "non-parties." *See* Code § 8.01-506.1(i) (permitting a subpoena to be "directed to a party to the case"). Decoupling the two code sections would expose judgment debtors to document subpoenas during and after that six-month window, undermining the statutory protection limiting a debtor's examination to once every six months.

Finally, we find it illuminating that Virginia is in the small minority of jurisdictions in the United States that do not make pretrial discovery rules broadly available to assist a judgment creditor in executing a judgment. Federal practice is notably different. In 1970, the drafters of the Federal Rules of Civil Procedure amended Federal Rule 69 to permit a federal-judgment creditor, in aid of execution, to "obtain discovery from any person—including the judgment debtor—*as provided in these rules* or by the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(2) (emphasis added). That amendment came in response to a district court

ruling that had "held that Rule 34 discovery is unavailable to the judgment creditor." Fed. R.

Civ. P. 69 advisory committee's note to 1970 amendment.

Thirty-three States and the District of Columbia have followed the federal example by

permitting the same pretrial discovery tools to be used, post-judgment, in aid of execution.[8] By

contrast, a handful of States (like Virginia) restrict those tools. For instance, Colorado allows a

third-party document subpoena in aid of execution, but only "upon proof to the satisfaction of the

court, that any person has property of, or is indebted to a judgment debtor."[9] The rules in

Maryland, Montana, Nebraska, and Washington allow debtor's interrogatories of third parties

holding assets of the judgment debtor but do not address document subpoenas.[10]

We find it significant that the General Assembly did not adopt the broader approach to

post-judgment discovery in aid of execution when it added Code § 8.01-506.1 in 1978. *See* 1978

Va. Acts ch. 339. Nor when it twice amended that statute. *See* 1986 Va. Acts ch. 249; 1993 Va.

Acts ch. 267. Similarly, the Supreme Court of Virginia has not yet seen fit to adopt a rule

equivalent to Federal Rule 69(a)(2). "Whether that is wise policy . . . is not for us to decide."

*Bio-Med. Applications of Arlington, Inc. v. Kenley*, 4 Va. App. 414, 422 (1987) (quoting

---

[8] *See* Ala. R. Civ. P. 69(g); Alaska R. Civ. P 69(a); Ariz. R. Civ. P. 69(c)(1); Ark. R. Civ. P. 69; Del. Super. Ct. R. Civ. P. 69(aa); D.C. Super. Ct. Civ. R. 69-I(a); Fla. R. Civ. P. 1.560(a); Ga. Code Ann. § 9-11-69; Haw. R. Civ. P. 69; Idaho R. Civ. P. 69(c); Ind. R. Trial P. 69(E); Ky. R. Civ. P. 69.03; La. Code Civ. Proc. Ann. art. 2451(B); Me. R. Civ. P. 69; Mass. R. Civ. P. 69; Mich. Ct. R. 2.621(B)(2); Minn. R. Civ. P. 69; Miss. R. Civ. P. 69(b); N.J. Ct. R. 6:7; N.J. Ct. R. P. 4:59-1(f); N.Y. C.P.L.R. §§ 5223-5224; Nev. R. Civ. P. 69(a)(2); N.H. R. Super. Ct. 52(a); N.M. R. Civ. P. 1-069(B); N.D. R. Civ. P. 69(b); Ohio Civ. R. 69; Pa. R. Civ. P. 3117(a); Okla. Stat. tit. 12 § 842(B); R.I. R. Civ. P. 69(a); S.D. Codified Laws § 15-6-69; Tenn. R. Civ. P. 69.03; Tex. R. Civ. P. 621a; Vt. R. Civ. P. 69; Wyo. R. Civ. P. 69; *see also* Ill. S. Ct. R. 277(a); *Bentley v. Glenn Shipley Enters., Inc.*, 619 N.E.2d 816, 819 (Ill. App. Ct. 1993) (describing "comprehensive framework for discovery of assets through supplementary proceedings").

[9] Colo. R. Civ. P. 69(f).

[10] *See* Md. R. 3-633(b)(1); Mont. Code Ann. § 25-14-103; Neb. Rev. Stat. § 25-1569; Wash. Super. Ct. Civ. R. 69(b); Wash. Rev. Code § 6.32.030.

*Ashbacker Radio Corp. v. F.C.C.*, 326 U.S. 327, 333 (1945)).  Given that far "more than half of our sister states," *Broadous v. Commonwealth*, 67 Va. App. 265, 272 (2017), have expanded post-judgment discovery expressly—whether by statute or by rule of court—it is not our place to do so here without such express authority.

CONCLUSION

The receiver acknowledged at oral argument that if the requirements of *Aufforth* apply, he cannot presently show that any of the third parties here are bailees or debtors of the judgment debtors.  Having found that UIDDA makes out-of-state subpoenas to Virginia residents subject to Virginia law, that a subpoena duces tecum under Code § 8.01-506.1 must be in aid of debtor's interrogatories under Code § 8.01-506, and that this code section—as construed in *Aufforth*— restricts such discovery to known bailees or debtors of the judgment debtor, we conclude that the trial court erred in failing to grant the third parties' motion to quash.

*Reversed and final judgment*.